F. L. Douglas, Administrator of the Estate of John Albrecht, deceased, Appellant, v. Richard Albrecht, and Isabella Albrecht, Administrator of the Estate of Earnest Albrecht, deceased, Appellees.

**Settlement and distribution of estates by agreement.** Those entitled to an intestate's estate, which is not indebted, may agree to a settlement and distribution of the same without administration, and an administrator subsequently appointed cannot recover the assets from those to whom it was distributed pursuant to the agreement. Evidence held sufficient to justify a submission of the issue of agreement to distribute the estate without administration.

*Appeal from Polk District Court.*— Hon. James A. Howe, Judge.

Friday, March 9, 1906.

The opinion states the case.— *Affirmed.*

*Carr, Hewitt, Parker & Wright* and *Clark & McLaughlin,* for appellant.

*Dale & Harvison,* for appellee.

Weaver, J.— John Albrecht of Polk county, Iowa, died intestate in the year 1897. His surviving heirs at law were his children, Richard Albrecht, Ernest Albrecht, Louis Albrecht, and Minnie Frederickson. In the year 1893, the

said John Albrecht made a deed of certain real estate to his daughter, Minnie Frederickson, and placed it in the hands of one Havens to be delivered to the grantee after the grantor's death. A few days thereafter, with the consent of Mrs. Frederickson, the grantor withdrew the above-mentioned deed from the hands of Havens and destroyed it and thereupon made a deed of the same property to his sons Richard and Ernest in trust for the use of Mrs. Frederickson and her children. At the time the first deed was made the bulk of the property owned by the said John Albrecht, other than the land above mentioned, was invested in certain promissory notes held by him against various parties living in the neighborhood. On the same date with said deed said Albrecht made a written list of these notes, and at the foot thereof wrote these words:

"After my decease the above notes belong to Richard and Ernest Albrecht to whom they will then belong. [Signed] John Albrecht."

It is claimed on part of Richard and Ernest that this list with the notes therein described were at the time delivered into the hands of Havens to be held for their benefit. At the date of this transaction John Albrecht was about seventy-five years of age, in ill health, and evidently believed that his death could not be long postponed; and, although he did not die until the year 1897, there is no evidence tending to show that he ever expressed any purpose or desire to change or withdraw the arrangement he had made, or attempted to make, for the disposition of his property. Soon after his death, his son Louis began an action in equity against his sister and brothers to set aside the trust deed above mentioned, on the theory that no sufficient delivery of the instrument had ever been made, and that it was not executed in such form as to make it effective as a will. Mrs. Frederickson also sought by cross-bill to reestablish the original deed conveying the land to her absolutely. The district court dismissed both bill and cross-bill and confirmed

the trust deed. On appeal to this court that judgment was affirmed. *Albrecht v. Albrecht,* 121 Iowa, 521. On December 19, 1899, the plaintiff herein, having been appointed administrator of the estate of John Albrecht, on the petition of Louis Albrecht began this action at law against Richard Albrecht and Ernest Albrecht, alleging that the said intestate died possessed of certain promissory notes and other personal property all of which had been by the defendants wrongfully converted to their own use, and asked to recover damages in the amount of the value of said property. In answer to this claim the defendants denied the alleged conversion and further pleaded that the only persons interested in or entitled to a share in the estate of John Albrecht were his said children, Richard, Ernest, Louis, and Minnie; that after the death of their father, by mutual agreement and settlement between themselves, the property and assets of said estate were divided between them in accordance with an arrangement made by their said father in his life time; and that thereafter, by a special arrangement and settlement with Louis, the defendants Richard and Ernest undertook and agreed to pay to said Louis an annuity of $60 per year, each of the defendants paying one half thereof, and the said Louis undertook and agreed to accept the same as in full compensation, settlement, and discharge of all his right and interest in the estate of his father. They further allege that in pursuance of said agreement they have in fact paid, and the said Louis has accepted from them, the stipulated annuity up to the beginning of this action, and that they have been at all times, and still are, ready, able, and willing to pay the same as it falls due. They also allege that, relying upon this agreement, they have paid in full the expenses attending the sickness and burial of their father and all charges against his estate, and that there are no outstanding claims against the estate, and that, the estate having been fully settled by mutual agreement, the appointment of an administrator was improp-

erly made.    Upon the issues thus joined there was a trial to
a jury resulting in a verdict and judgment for the defend-
ants.    The plaintiff appeals.    The said Ernest Albrecht
having died pending this litigation, his administratrix, Isa-
belle Albrecht, has been substituted as defendant in his stead.

I.    If we understand the contention of appellants in
their argument in chief, it is to the effect that, even if the
heirs of John Albrecht did enter into an agreement to set-
tle and distribute his estate, and although there were no
outstanding claims of creditors to be satisfied, such settle-
ment and distribution does not avoid the necessity or pro-
priety of administration; and that an administrator there-
after appointed may demand the surrender to him of the
items of personal estate so distributed, and, upon refusal to
comply with such demand, may maintain an action for their
conversion.    We do not so understand the law.    It is true
that expressions may be found in some of the cases relied
upon by appellant which tend to sustain his position in this
respect, but we know of no precedent going to the extent of
the proposition here advanced.    In neither *Haynes v. Har-
ris,* 33 Iowa, 516, *Baird v. Brooks,* 65 Iowa, 40, nor *Foss
v. Cobler,* 105 Iowa, 728, is a case presented where all the
parties in interest have made settlement and distribution
among themselves after the death of the ancestor; nor does
the decision in either of those cases necessarily involve the
recognition of a principle which would require us to hold
that such a settlement cannot be upheld.    It may be con-
ceded that the court is not without authority to appoint an
administrator even if there be no creditors of the estate; but,
if, on being appointed and bringing action against the heirs
to recover the property, it is shown that all the heirs have
already united in making a settlement and distribution of
the personal assets of the estate, that agreement will not be
annulled or ignored by the court, and the court will not sac-
rifice substance to form by ordering the delivery of said
assets to the administrator merely to be redistributed to the

same parties and in the same proportions as before. Notwithstanding the random expressions which may be cited from various authorities, we think it is not true that the heir obtains no title or interest in the personal estate of his ancestor except through the medium of an administrator. That such is not the case we have directly held in *Moore v. Gordon,* 24 Iowa, 158; *Christe v. Railroad Co.,* 104 Iowa, 707; *In re Weaver's Estate,* 110 Iowa, 332; *Murphy v. Murphy,* 80 Iowa, 740; *Phinny v. Warren,* 52 Iowa, 332; *Ferry v. Campbell,* 110 Iowa, 296.

And in Murphy v. Murphy, *supra,* we held to the doctrine that one heir or distributee of an estate could maintain an action against another to enforce his rights in the property, although no administrator had been appointed, and the limit of time in which such appointment could be made had not yet expired; it affirmatively appearing that all the heirs were before the court, and that the debts of the estate were paid. Indeed, the reply argument of appellant appears to concede the law to be as we have stated, counsel frankly saying that, if there was in fact a complete settlement between the heirs, " this litigation should proceed no further." That question is principally one of fact, and the jury have found it against the appellant. Unless, therefore, there was some manifest error in the course of the trial, or it can be said by us that there was no evidence to support the verdict in this respect, the judgment appealed from must be affirmed without reference to the question whether there was a completed gift of the property to the defendants in their father's lifetime.

Our examination of the record satisfies us that there was ample evidence to go to the jury upon the question whether the alleged settlement was agreed to by Louis Albrecht. It is true that Louis was not present at the time of the conversation between his brothers and sister immediately after their father's funeral. His location at that time appears to have been unknown; but he soon returned,

and, upon making known his dissatisfaction with the arrangement, and after considerable negotiation with his brothers, it is shown without dispute that he agreed to accept the life annuity of $60 in full for his share or interest in the personalty of the estate, and for two years thereafter he recognized the validity of the agreement by receiving and accepting the annuity so provided. It is to be borne in mind that John Albrecht left no real estate except that conveyed in trust for the benefit of his daughter, and the settlement therefore had reference to all property in which Louis could have rightfully insisted upon any share or interest. He did not testify as a witness in his own behalf, nor in any manner deny or discredit the testimony given in support of the defense, and in view of the record as made it would have been strange had the jury not found against him on that issue.

He seeks, however, or rather the administrator in his behalf seeks, to escape this very apparent point by insisting that it does appear that his sister, Mrs. Frederickson, did not join with the rest in the alleged agreement, and that the attempted settlement was therefore ineffectual. Here also the party most interested in this particular question, Mrs. Frederickson, is not produced as a witness, and we are left to the version given of the transaction by the others who were present at that time. It is not correct to say, as counsel do, that she was not present. It is shown that on the day after the funeral Richard and Ernest came to the residence of the Fredericksons on the land which had been left in trust, where they met their sister and her husband and Mr. Havens. The meeting appears to have been arranged for the purpose of settling their family affairs, and after being assembled the box containing the papers and notes which their father had owned was brought out and the contents displayed. Havens produced the trust deed and other papers which had been in his keeping. Mrs. Frederickson continued about her household duties passing

in and out of the room where the business was being done and remarking that she "had no time" or "didn't want anything to do with it." It is shown, however, that at times she did "put a word in" during the talk over the matters, and that her husband was at all times present during the talk. So far as is shown neither Mrs. Frederickson nor any of the other parties present raised any objections whatever or has since objected to what was done. After the promissory notes had been divided between Richard and Ernest, except one note of $100 against Frederickson which was there surrendered to him, he and the brothers went out to the barn, where there was a cow and some hay and grain, and this property, the entire remnant of the estate, was sold to Frederickson or left with him to dispose of, and the proceeds were also divided between the •two brothers. Indeed Mrs. Frederickson and Richard and Ernest appear to have believed·it to be a moral, if not legal, duty on their part to respect the arrangement made by their father with Mr. Havens in 1893, as to the disposition of his estate, and to have accepted that as a basis of their settlement without question or hesitation. Mr. Havens rehearsed to Mrs.· Frederickson what he claimed to have been the substance of that arrangement, to wit, that she should take the household furniture and the interest given her in the land for her share in the estate, and that the personal property should be divided between Richard and Ernest, and with that knowledge permitted the personalty to be divided between her brothers without protest. As the father had expressed his purpose to do .nothing for Louis, who was then absent, the rest of the heirs left him out of the account in their mutual settlement, and the adjustment with him was made after his reappearance at a later date. The acceptance of this provision in her behalf and her recognition that the provision· made for her in the trust deed was more than her ratable share in her father's property affords sufficient explanation, if any is needed, why she failed to exercise a

more prominent part in the settlement and distribution of the personal estate. To say the least, these facts, with her silence in the case, and the entire absence of any evidence that she has ever objected to or sought in any way to repudiate the settlement reached on the day here referred to, were certainly sufficient to take the case to the jury. As the court instructed the jury that for at least a part of the property there must be a verdict for plaintiff, unless they should find for defendants upon the alleged settlement after the father's death, the general verdict in defendant's favor is equivalent to a special finding that the alleged settlement was made, and, this being the case, we think it unnecessary for us to discuss or determine the legal effect of the act of John Albrecht in assigning or attempting to assign the promissory notes to the defendants. Other objections argued by counsel are governed by the conclusions we have already announced, and do not disclose any prejudicial error.

The judgment appealed from is *affirmed.*