In Re VASGAARD'S ESTATE.
PETERSON, Appellant, v. HAUGEN, et al; Respondents.
(253 N. W. 453.)
(File No. 7647. Opinion filed March 6, 1934.)

See, also, 61 S. D. 240, 248 N. W. 198.

*Alan Bogue* and *Everett A. Bogue,* both of Parker, for Appellant.

*Danforth & Davenport,* of Sioux Falls, for Respondents.

CAMPBELL, J. Endre J. Vasgaard died January 18, 1932, being a resident of Minnehaha county, S. D., and leaving estate therein consisting of personal property of the estimated value of $59,000. On May 17, 1929, he had executed a will naming his son John as executor and disposing of all his property to his wife Anna and his five children. The wife Anna presently died, and thereafter, and on October 1, 1929, Vasgaard executed a second will as follows:

"I, Endre J. Vasgaard, being of sound mind and disposing memory, aware of the uncertainty of life and the certainty of death, and being desirous of making a proper and an equitable distribution of my property at my decease, I do make, ordain, publish and declare this to be my last Will and Testament in manner and form following, that is to say:

"1st.

"It is my will, and I desire that all my just debts shall be paid

as soon as practicable out of the property of which I die seized and possessed.

"2nd.

"Subject to the provisions in paragraph 1, and if I die seized and possessed of any property, I give, the same to my following children: Helena Haugen, John Vasgaard, Emelie Lauritzen, Magdalena Sophy and Myrtle Jory, each share and share alike and to be theirs absolutely and forever.

"3rd.

"I hereby appoint James Mee and Robert Peterson of Centerville, South Dakota, to be the executors of this my last Will and Testament, hereby revoking all former wills made by me.

"In Witness Whereof, I have hereunto subscribed my name this 1st day of October, A. D. 1929.

"Endre J. Vasgaard."

The will appears on its face to have been legally executed and witnessed and was left in the custody of the executors. Promptly after the death of the testator the executors delivered the will to the county court of Minnehaha county (section 3201, R. C. 1919) and on January 25, 1932, petitioned for the probate thereof.

Thereafter the beneficiaries named in the will, who were also the sole heirs at law of the testator, each being of sound mind and full age, entered into the following written agreement:

"Contract of Family Settlement.

"In settlement of the purported controversy and contest, all of the devisees and legatees joined in a contract of family settlement as follows:

"This contract and agreement made and entered into by and between Myrtle Jory, party of the first part, and Helena Haugen, John Vasgaard, Emelie Lauritzen, and Magdalena Sophy, parties of the second part, witnesseth:

"Whereas, Endre J. Vasgaard, now deceased, left an instrument purporting to be the last will and testament of said Endre J. Vasgaard, which instrument was purported to have been executed by said deceased on or about the 1st day of October, 1929, and which instrument has been presented for probate in the County

Court of Minnehaha County, South Dakota, in the above entitled proceedings; and,

"Whereas, the party of the first part has filed a contest and objections to the probate of said will, and from which contest and objections it appears that the parties to this contract constitute all the heirs at law of said deceased, and all persons interested in the estate of said deceased, and are the only persons entitled to distributive shares in said estate, either under said purported will, or otherwise; and,

"Whereas, it appears that the said deceased, on or about the 17th day of May, 1929, made and executed his last will and testament in accordance with his own wishes and in accordance with the contract and agreement between the parties to this contract wherein and whereby he recited that he had made certain advancements to the parties of the second part, aggregating the sum of Sixteen Thousand Dollars ($16,000) to each of the parties of the second part, and that at the time of the execution of said will on May 17, 1929, he had likewise made an advancement by transfer of property to the party of the first part, aggregating Seven Thousand Dollars ($7,000); and,

"Whereas, by the terms of said will it was provided that the party of the first part should receive out of the estate of said deceased an additional sum of Nine Thousand Dollars ($9,000) before a division of the residuary part of said estate, and that such residuary estate should then be equally divided between all the parties to this contract, so that all the parties to this contract would share equally in the Estate of said Endre J. Vasgaard, deceased; and,

"Whereas, it further appears from the contest filed herein by said Myrtle Jory that it was the wish of the deceased, and the agreement between the deceased and all of his heirs that his sole son, one of the parties to this contract, John Vasgaard, should administer his estate; and,

"Whereas, it further appears from said contest that the instrument presented to this court and purported to be the will of said deceased, was executed at a time when said deceased was of unsound mind and was probably not executed in the manner and form required by law, and was obtained by virtue of undue influ-

ence exerted over said deceased by the parties presenting said instrument for probate, to-wit; James Mee and Robert Peterson,

"Now, therefore, it is hereby agreed by and between all the parties to this contract, as a family settlement, and by all the parties interested in distributive shares of said estate, either as heirs at law or otherwise, that for mutual considerations, and for the purpose of avoiding any controversies or contest in this matter, and for the purpose of protecting and preserving the interests of all the parties in interest in said estate, that said purported will so presented by said James Mee and Robert Peterson, be and the same be set aside and declared not to be the last will and testament of said Endre J. Vasgaard, and that the property in the estate of said deceased, after payment of all just debts and funeral expenses, and any expenses incurred in this proceedings, prior to the making of this contract, be distributed and divided in accordance with the terms and conditions of the instrument or will of said Endre J. Vasgaard, deceased, bearing date the 17th day of May, 1929, and that John Vasgaard be appointed administrator of said estate, and that a decree of distribution be entered herein in said proceedings by this court, distributing said estate in accordance with the terms and conditions of the will of Endre J. Vasgaard made on the 17th day of May, 1929, that is to say, that after payment of debts, funeral expenses, etc., as hereinbefore set forth, that there be paid out of said estate to the contestant, Myrtle Jory, first the sum of Nine Thousand Dollars ($9,000), and that the residue of said Estate be thereafter distributed and divided in equal shares, share and share alike, between all the parties to this contract, and that the court in accordance with this stipulation, contract and agreement. is hereby authorized to deny probate to the instrument presented by James Mee and Robert Peterson, authorized to set said purported instrument aside, and upon final distribution of said estate, is entitled and empowered by this contract, stipulation and agreement to enter a decree in conformity with this contract.

"In witness whereof, all of said parties have here subscribed their names this 15th day of February, 1932."

The children advised the executors of the agreement they had made and requested that the executors withdraw their petition for the probate of the will, which they refused to do. Thereupon the

children filed written grounds of opposition to the probate of the will, and contested the same. Various grounds of contest were alleged, including lack of due execution and attestation, mental incompetence of the testator, and fraud and undue influence. No evidence was offered in support of these allegations, however, and the only ground of contest upon which any ultimate reliance was placed was the fact of the execution of the contract above set out.

An attempt to prohibit the county court from admitting the will to probate failed (Haugen v. Larson, Judge [1932] 60 S. D. 438, 244 N. W. 654); a majority of the judges of this court expressing no opinion in the premises save only that the writ of prohibition would not lie. The county court found in favor of the proponents and ordered the admission of the will to probate, from which decision the children took an appeal to the circuit court of Minnehaha county. An effort to compel the dismissal of that appeal by mandamus from this court (Mee et al v. Circuit Court ['1933'] 61 S. D. 240, 248 N. W. 198) was unsuccessful. The circuit court proceeded to hear and determine the matter and made findings, conclusions, and judgment in favor of the contesting children, reversing the decision of the county court and remanding the cause thereto, with directions to enter an order refusing probate of the will.

From that judgment of the circuit court the proponent Peterson (his coproponent Mee being now deceased) has now appealed to this court.

The matter of family contracts in relation to the settlement and distribution of the estates of decedents presents many interesting angles and is briefed by both parties to this appeal with ability and diligence. Numerous cases will be found collected in comprehensive annotations in 46 Am. Dec. 438; 15 Ann. Cas. 742; 23 L. R. A. (N. S.) 783; 6 A. L. R. 555; 38 A. L. R. 735. Also on the topic generally, see a most interesting article by Dean Evans of the University of Kentucky Law School in vol. 32, Mich. Law Rev. (No. 4, February, 1934) p. 478, under the title "Certain Evasive and Protective Devices Affecting Succession to Decedent's Estates."

██ With scarcely a dissenting voice save in the state of Wisconsin (Will of Dardis [1908] 135 Wis. 457, 115 N. W. 332,

23 L. R. A. (N. S.) 783, 128 Am. St. Rep. 1033, 15 Ann. Cas. 740; Graef v. Kanouse [1931] 205 Wis. 597, 238 N. W. 377) it is held that family agreements relative to the distribution of property of a decedent among the persons thereto entitled are not contrary to public policy and if fairly made are binding and enforceable according to their terms; and indeed it is frequently said that the law looks with particular favor upon such family compromises. To that view this court is already committed and has refused to recede therefrom. See Ewing v. Waddington (1933) 62 S. D. 166, 252 N. W. 28, and cases there cited.

Whether by such an agreement duly executed by all parties in interest (they being sui juris and no rights of creditors being involved) the functioning of a court of probate upon the estate of a decedent can be dispensed with presents a question upon which the courts are not entirely in harmony, some decisions indicating that this cannot be done (In re Strong [1898] 119 Cal. 663, 51 P. 1078; State ex rel Mann v. Superior Court [1909] 52 Wash. 149, 100 P. 198), while perhaps a greater number held, in substance, that it can be done (Note 46 Am. Dec. 437; Phillips v. Phillips [1839] 8 Watts [Pa.] 195; Walworth v. Abel [1866] 52 Pa. 370; Weaver v. Roth [1884] 105 Pa. 408; Vanderveer v. Alsten [1849] 16 Ala. 494; Huson v. Wallace [1844] 1 Rich. Eq. [S. C.] 1; Spann v. Jennings [1833] 1 Hill, Eq. [S. C.] 324; Taylor v. Phillips [1858] 30 Vt. 238; McCracken v. McCaslin [1892] 50 Mo. App. 85; Richardson v. Cole [1901] 160 Mo. 372, 61 S. W. 182, 83 Am. St. Rep. 479; Gwinn v. Melvin [1903] 9 Idaho 202, 72 P. 961, 108 Am. St. Rep. 119, 2 Ann. Cas. 770; Douglas v. Albrecht [1906] 130 Iowa 132, 106 N. W. 354; Waterhouse v. Churchill [1902] 30 Colo. 415, 70 P. 678). Of course, we do not have here any attempt entirely to evade the jurisdiction of the probate court. In fact, the parties have contracted that such court shall name an administrator who shall distribute according to the agreement of the parties.

Appellant does not particularly quarrel with the doctrine that contracts of family settlement fairly made are compatible with a sound public policy and enforceable according to their terms, but earnestly urges that to recognize the validity of such contracts and to enforce them (substantially upon the principles of estoppel) inter parties is one thing; while to permit the jurisdiction of a court

to be ousted by the mere existence of such a contract when such jurisdiction is lawfully invoked by one not a party to the contract is quite another. There is much force in this argument, although the question is by no means free from difficulty.

By their written contract in this case the parties, in substance, and in so far as lies in their power, have repudiated the will and have elected not to take as beneficiaries thereunder; they have, in substance, agreed to take as heirs at law as distinguished from legatees or devisees; they have agreed upon an administrator and have agreed how the property which they are to acquire as heirs at law shall be distributed among them. It may very well be that this contract would estop each one of the parties thereto from seeking the probate of the will in question, but that is not what is happening here. There can be no question of estoppel. The petition for probate is by Peterson, the executor named in the will, who was not a party to the contract, and who, as such executor, is specifically authorized by statute (section 3202, R. C. 1919) so to petition. The county court having found the existence of the jurisdictional facts (section 3178, R. C. 1919), that the will was duly executed, and that the testator was of sound and disposing mind and not under duress, menace, fraud, or undue influence, it would seem that the will should be admitted and certificate of probate issue (section 3229, R. C. 1919) unless, by virtue of the contract entered into by the beneficiaries (assuming its entire validity inter partes), the will of the testator has been, in substance, destroyed and rendered a nullity. Cases such as Carter v. Owens (1867) 41 Ala. 217, and Stringfellow v. Early (1897) 15 Tex. Civ. App. 597, 40 S. W. 871, are not strictly in point, for in those cases the executor was also a beneficiary under the will and was found to have joined in the family agreement so that estoppel would be available against him just as much as against any other party to the agreement. We have found only one case, or rather the diligence of counsel has presented us with but one case, which is squarely in point, and that is a decision by the orphans' court of Centre county, Pa., reported under the title of Lloyd's Estate (1901) 24 Pa. Co. Ct. R. 567, 10 Pa. Dist. R. 207. In that case the testator named as executors his daughter Ida and one Frieberger. Ida was both an heir at law and beneficiary under the will. Frieberger was neither. The beneficiaries and heirs at law

(including the coexecutrix, Ida) joined in a family agreement for the distribution of the property on terms quite different from those provided in the will, advised Frieberger of the fact, and requested him to renounce his right to take out letters. He refused so to do and sought the admission of the will to probate. The contracting heirs and beneficiaries filed a caveat against the admission of the will to probate, alleging that there was no necessity therefor, its provisions being impossible of execution and the decedent having left no debts. The court held, in substance, that the agreement and family settlement superseded the will and set it aside and that there was no occasion for issuing letters testamentary thereon, and said in part: "The parties to said agreement are all sui juris and are all the persons having any interest in the estate. They, by the agreement have changed the distribution of the estate entirely from that provided for in the will. The real estate they accept as land. The failure of the devise of certain real estate to the widow by reason of the testator having sold it in his lifetime and appropriated to himself the proceeds, is compensated for by the agreement, and from the evidence taken it is proven that the decedent left no debts. It is contended that there is a revenue tax, that is a debt. While there may be a tax under the war revenue act of congress, it is not a debt of the decedent, but a debt due from the distributees of the estate, and is not such a debt as necessitates administration. The will creates no trusts. It is true it confers a power to sell real estate and distribute the proceeds, and thus works an equitable conversion thereof. But the beneficiaries have a right to elect to take as land. Now when the decedent leaves no debts, and his estate involves practically distribution only, then the distributees are, under the will or intestate laws, the owners of the estate. And where there are no creditors having any interest therein, we are of the opinion that the beneficiaries of the estate, all being sui juris, have the right and power to agree among themselves to a satisfactory distribution of the estate, and a family settlement of this kind made supersedes the will, and none without any interest in the estate can interpose to prevent it. The prospective commissions that may be earned by an executor named in the will, is not such an interest as gives him a standing to interfere or successfully oppose such a settlement. A family agreement or settlement made different from the provisions of a will, super-

sedes the will or prevails over it. Wiilen's Appeal, 105 Pa. 121. Also Walworth v. Abel, 52 Pa. 370; Weaver v. Roth, 105 Pa. 408, opinion on page 413. Family arrangements are the favorites of the law, and if fairly made are not to be disturbed by the parties. And if not to be disturbed by the parties, what standing has a stranger without interest in the estate, to gainsay them or endeavor to annul them. This agreement making an entirely different distribution of the estate than that provided for by the will and having been made by parties sui juris and in whom there was a complete equity in the property, they have the right and may distribute without administration there being no creditors or others interested in the estate. That being so there is no will to execute, the agreement of settlement supersedes it, and hence it is set aside by persons who have the right and power to do so and who are competent to so do. That being so, why should letters testamentary issue thereon? We fail to see any good reason for so doing or any equity therefor."

Upon this case respondents much rely, and so apparently did the circuit court, for it found as follows: "The court further finds that because of the existence of said contract and the fact that there are no debts against the estate of said deceased, no trust provisions contained in the will of said deceased, and that the interests of all parties in interest in said estate are vested, that there are no functions to be performed by the executors named in said instrument, that all parties interested have waived the provisions of said will and that it is functus officio and should, therefore, be denied probate."

With this holding of the Pennsylvania county court we find ourselves unable to agree. The rule there announced might be applicable in case of intestacy where there had been no attempt by will either to dispose of property or name an executor, but we think it misconceives and disregards the power and authority of a testator with reference to the making of a will.

Admittedly there is no power which can compel any person to become beneficiary under a will if he is unwilling to do so. A testator may make such disposition of his property by will as is pleasing to him, but if all the beneficiaries whom he names, being sui juris, by valid agreement renounce the gifts to them and refuse to take under the will, they are entirely within their

rights and they have thereby, in substance, accomplished for the testator a complete intestacy so far as disposition of property is concerned. That, in substance, is what has happened in the present case.

It is to be borne in mind, however, that the disposition of property according to the specifically expressed desire of the testator is only one of the permissible functions of a will. To be a valid will the instrument executed by the testator must either provide for the disposition of his property after death or nominate an executor. It may and usually does do both, as was the case here, but it is sufficient if it does either. No one would question but that a will may properly be admitted to probate which provides for disposition of the testator's property but names no executor, and it seems to be just as true upon the authorities that a will is entitled to probate which nominates an executor without undertaking to make any disposition of property.

"It may often occur that, subject to the payment of his just debts, a testator is quite willing that his property shall be succeeded to as provided by law, while the selection of the minister through whom the settlement is to be made and the distribution is to be had is not only a matter of deep interest to him, but of vital interest to the estate; and, as the law accords to him the privilege of making the selection of his executor, it must be upheld, when duly made." In re Hickman's Estate (1894) 101 Cal. 609, 36 P. 118, 119.

"The nomination of an executor is sufficient to make the instrument a will. It is not uncommon for a testator to make his will for the sole purpose of nominating an executor to administer his estate." In re John's Will (1896) 30 Or. 494, 47 P. 341, 343, 50 P. 226, 36 L. R. A. 242.

See, also, Jolliffe v. Fanning (1856) 10 Rich. Law (S. C.) 196; O'Dwyer v. Geare (1859) 1 Swab. and Tr. 465, 164 Eng. Rep. Rep. 815; In re Jordan (1868) Eng. Law Rep., P and D 1, 555; Prater v. Whittle (1881) 16 S. C. 40; Barber v. Barber (1879) 17 Hun (N. Y.) 72; Sumner v. Crane (1892) 155 Mass. 483, 29 N. E. 1151, 15 L. R. A. 447; Stewart v. Stewart (1901) 177 Mass. 493, 59 N. E. 116; Mulholland v. Gillan (1903) 25 R. I. 87, 54 A. 928, 1 Ann. Cas. 366; Fontaine v. Fontaine (1925) 169 Ark. 1077, 277 S. W. 867; Alexander Commentaries on Wills,

§ 22; Page on Wills (2d Ed.) § 38; Woerner American Law of Administration (3d Ed.) p. 82.

It appears therefore that these two functions of a will, to wit, the disposition of property and the nomination of an executor, are separate and separable rather than interdependent. Either may constitute a valid will lacking the other. So far as concerns the portion relating to disposition of property, the testator's desires are subject to be entirely defeated by the refusal of his beneficiaries to take or by many other conceivable happenings, but certainly they cannot be defeated by any action which the executor may take. As to the other portion of the will, the nomination of an executor, the desires of the testator may be defeated by death of the person named (which has occurred in this case as to one of the executors) or by refusal to act, but if the person named is qualified, competent, and willing to act, it is difficult to see why the testator's wish with reference to his acting should be defeated merely because it is not agreeable to his heirs. The fact that the nominee could refuse to act if he desired is not material.

We have then in this case this situation. A will disposing of property to certain beneficiaries and nominating an executor; the beneficiaries have refused, as they lawfully may, to take under the will; the executor is willing to act. The will would be a valid instrument if the second paragraph were omitted and no attempt made to dispose of any property. The executor is petitioning for probate as the statute authorizes him to do. We are of the opinion that the will should be admitted to probate.

What may be the scope or extent of the authority, power, or duty of the executor when the will is admitted is a matter that is in nowise involved in the present proceeding, and, of course, we express no opinion thereon.

The judgment appealed from is reversed, and the cause remanded, with directions for the entry of judgment affirming the decision of the county court of Minnehaha county.

ROBERTS, P. J., and RUDOLPH, J., concur.

POLLEY and WARREN, JJ., dissent.

POLLEY, J. (dissenting). I still adhere to the views expressed in my opinion on the application for writ of prohibition.

Haugen et al v. Larson, Judge, 60 S. D. 438, 244 N. W. 654. I think the judgment appealed from ought to be affirmed.

WARREN, J. (dissenting). The heirs of the estate of Endre J. Vasgaard entered into a written agreement disposing of the assets of the estate and by so doing the provisions of the will have been completely nullified. There is nothing of it left upon which the court can act; that is, it leaves the person named in the will as executor without any estate to administer and surely no property over which he can exercise dominion and control.

It may be argued that a will naming an executor, properly executed, is a will. Such cannot be the intention and the real meaning of a will. Sections 604 to 698, inclusive, of the S. D. 1919 Revised Code, surely indicate that there must be property. In the first section the fact is mentioned that every person may dispose of his estate real and personal. In fact there is a continuous thought running through all of the sections that a will has for its object the disposition of real and personal property. In Black's Law Dictionary we find will defined as follows: "A will is the legal expression of a man's wishes as to the disposition of his *property* after his death; an instrument in writing executed in form of law by which a person makes a disposition of his *property* to take effect after his death." (Italics ours.)

Effect must be given to the purpose of the making of a will. If there is no property then the making of the will and its admission to probate is an idle act. Section 64, 1919 S. D. Revised Code: "The law neither does nor requires idle acts." In the case before us it surely is an idle act as there is nothing left excepting the instrument and the individual named as executor. Wills are made for the purpose of disposing of property in whatever form it may be and not for the mere purpose of having an executor, who would have nothing to do and no office to perform.

In the presenting of a will for probate, under our probate procedure, one of the requisites of section 3203, 1919 S. D. R. C., is the showing of the probable value and character of the property of the estate. In the case before us the property has been disposed of by the contract in writing. There is, therefore no property to be disposed of by the terms of the will, and the very purpose of drawing the will has been defeated, and I doubt that the

court could take jurisdiction for the reason that it cannot truthfully be said that, under section 3203, paragraph 4, there is any property belonging to the estate, and, without being able to show that there is property, the court cannot take jurisdiction. Subdivisions 2, 3, and 4 of section 3178, 1919 S. D. Revised Code, dealing with wills which must be proved, use the term "estate"; again, in section 3179, the term "estate of decedent" is used. It is quite clear that the entire structure of our statutory law pertaining to wills is based upon the fact that there must be property or estate. Without estate there is nothing. In fact there are no jurisdictional facts without the showing of property which makes up an estate. I am thoroughly in accord with the holding expressed in Lloyd's Estate, 24 Pa. Co. Ct. R. 567, and also with the written opinion written by Judge Polley (Haugen v. Larson) reported in 60 S. D. 438, 244 N. W. 654.

The judgment and order appealed from should be affirmed.