In re Estate of Henry G. Van Hauen.

Fannie Tjepkes, Administratrix, Appellee, v. Tatta Van Hauen et al., Appellants.

No. 45325.

December 10, 1940.

Van Eman & Mulder, for appellee.

Sweet & Sager, for appellants.

Richards, C. J.—Before discussing the application and the court's order it may be well to narrate some things that went

before. The decedent departed this life October 28, 1938. On June 1, 1927, Harm H. Van Hauen, Jr., one of aforementioned children, had given decedent a mortgage (joined in by Pearl, wife of Harm) for $11,500 upon the West ⅔ of South ½ of Section 26 Twp. 89 R. 16 in Grundy county, subject to an $11,000 first mortgage held by Prudential Insurance Company. On February 20, 1930, an instrument was recorded that decedent had executed on the same day. It was signed and acknowledged by decedent and was in these words: ''In consideration of the payment of the debt, secured thereby, I do hereby release the mortgage executed by Harm H. Van Hauen and Pearl Van Hauen, his wife to Henry G. Van Hauen which said mortgage is recorded in Book 186 on page 613 of the records of Grundy County, Iowa.'' The mortgage identified in this instrument was that given decedent by Harm and wife, Pearl, on June 1, 1927. At the time this instrument was executed by decedent, the Federal Land Bank had approved conditionally an application made by Harm H. Van Hauen for a loan of $12,000 to be secured by first mortgage on the land described above. The condition was this—the Federal Land Bank required that the application of the $12,000 upon the indebtedness against the land should effect an extinguishment of all such indebtedness, including the second mortgage held by decedent. Otherwise the Federal Land Bank was refusing to make the loan. The evidence clearly establishes that when decedent executed the instrument of February 20, 1930, he knew these were the requirements, and that to meet such requirements the second mortgage would have to be released and extinguished if the loan was made, and he knew that a part of the loaning requirement made by the bank was that Harm H. Van Hauen would not give back to decedent again a note or mortgage for the indebtedness decedent's mortgage had secured. As a matter of fact no such note or mortgage ever was given decedent thereafter, nor is there shown in any manner any agreement between decedent and Harm looking to the payment of any of the indebtedness the mortgage had secured. Following the execution and recording of the instrument of February 20, 1930, the loaning and application of the $12,000 upon the indebtedness against the land was consummated. On November 23, 1938, Harm H. Van Hauen and wife executed

a note for $11,500 to Tatta Van Hauen, the widow of decedent, and to secure same gave Tatta a mortgage upon the premises hereinbefore described, subject to the $12,000 mortgage that Harm and wife had given the Federal Land Bank.

We advert now to the application. The relief the administratrix therein sought was that the mortgage given by Harm and his wife to Tatta be construed to be the property of the estate of Henry G. Van Hauen, deceased, and that Tatta be required to assign the mortgage to the administratrix. In the order entered by the court it was adjudged and decreed that the mortgage made to Tatta is an asset of said estate, and it was further ordered, adjudged and decreed that Tatta Van Hauen assign the mortgage and note to the administratrix. Additionally the court appointed a commissioner to make such assignment in event Tatta should fail so to do within 20 days.

The administratrix takes the position in argument that the court's order was justifiable because the note and mortgage given by Harm to his mother, Tatta, were in truth renewals of the note and mortgage given by Harm to decedent on June 1, 1927, and that, as the original note and mortgage belonged to decedent, a renewal of them would be the property of the decedent's administratrix, on which the administratrix is entitled to administer. To sustain her major premise, that the note and mortgage to Tatta were renewals of the earlier instruments, the administratrix says that fact "is evidenced by the fact that the new mortgage given was for the identical principal amount as the old mortgage of $11,500.00 and there is sufficient evidence to show that the interest thereon was compromised." And it is true that the principal of both mortgages was in the same amount. But this circumstance does not in itself lead to appellee's conclusion with any satisfying certainty. Before attempting a conclusion at all, one should envision the things that transpired during the evening the note and mortgage to Tatta were executed, at the office of the attorney for the administratrix. Upon this occasion the administratrix and others of the heirs present and the appellee's attorney, who had prevailed upon Harm and his wife to come to his office, were insisting that Harm and his wife owed the decedent, and so his estate, and that he ought to make it right forthwith by giving a note and mortgage

for $15,000. Harm refused to do so. A mortgage for $11,500 was then suggested, the attorney saying: "Harm you owe the estate and the heirs that $11,500; it would be more but they aren't asking any interest, but just the principal of $11,500." Others present "kept at him" to sign such a note and mortgage. Harm and his wife retired from the room and upon their return again refused. Harm stated he wanted a couple of days time so that he could think it over, but, according to the testimony of the administratrix, "Menno insisted that it should be done that night, as he had already had too much time and we had waited long enough, and he kept at him that way, and they all did, my brothers, Menno in particular, and then my brother Harm and his wife stepped out again in the other room and talked it over and then they came back and Harm said that he just couldn't do it, that he had so much other stuff that he just couldn't do it then, and that he would have to have time, and Menno and Elso told him he had had time enough, and that he had to fix it up that night and sign the note and mortgage there that night." But Harm at no time consented to give a new note or mortgage to the heirs or the estate. The demands that he do so turned out to be wholly futile. A new demand upon Harm was then projected into the discussion. The attorney said to Harm that his mother, Tatta, had no money to live on and had no money that she could live. All present, including Harm and his wife, were in accord that that was true, and that she had to be provided money. In view of that fact it was urged that Harm give his mother, Tatta, a note and mortgage. Harm and his wife again withdrew, and returning to the room where the others were, Harm stated that he and his wife would give a note and mortgage to his mother, Tatta, saying "if it goes to mother I'll do it." The attorney immediately drafted and Harm and his wife signed the $11,500 note and mortgage payable to Tatta Van Hauen. Same were later delivered to Tatta by the attorney.

What occurred in the attorney's office on this evening is the sum total of the testimony that pertains to the question whether the note and mortgage given by Harm to his mother was in truth a note and mortgage given to the heirs or estate. The trial court held it was. But it is certain that Harm had no such intention. He was not conscious that he was complying

with the demand for a note and mortgage on which he was obligated to the estate—the very demand with which he had positively refused to comply. It clearly appears in the record and is undisputed that when Harm and his wife gave his mother the note and mortgage it was intended that it should be her own absolute property. Concededly appellee agreed it be so, and was instrumental in bringing it about. Her first complaint about it was when Tatta refused to assign interests in the note to appellee in her personal capacity, and to others, in a manner appellee, without Harm's knowledge, expected of Tatta. Harm's single purpose was that his mother's livelihood be assured to her. If the trial court was right in holding that this mortgage given by Harm to his mother was one given to the estate, it must be because there was some sound reason for holding that Harm and his wife must be held to have become burdened, by what they did, with an obligation wholly unintended by them.

We are unable to discover any such reason. The decedent had voluntarily extinguished the debt. This the administratrix recognized in not listing in her inventory any claim against Harm, though she personally knew of the transaction in which the indebtedness had been discharged by decedent. No fraud on the estate could there have been on the part of Harm, for there was no duty that he reassume liability upon a discharged indebtedness. There is no claim that there are any unpaid creditors of the estate. The contrary is the inference from the record. Something is said in argument as to public policy interdicting the giving of a new obligation and mortgage on the same land in violation of the conditions insisted upon by the Federal Land Bank when it loaned the $12,000, conditions that were adopted and concurred in by decedent and Harm. See Meek v. Wilson, 283 Mich. 679, 278 N. W. 731. But palpably there is in this question nothing advantageous to appellee, and, in any event, if there was violation of public policy, appellee was an active participant. Mutual mistake of the parties as a reason for the trial court's holding is not in the case. An argument counsel for appellee have advanced is that an affirmance on this appeal would "clearly be a decision in favor of the appellants because such a decision would necessarily make the said note and mort-

gage a live and vital instrument in the hands of the estate for the benefit of the widow and all the heirs including all of the appellants, whereas, a decision to the contrary would make a dead and useless instrument of the note and mortgage in the hands of the widow because there is no consideration whatever to support the note and mortgage in her hands." The thought appears to be that we should take a hand in the making of a contract for the parties. The advantages appellee holds out seem also to be lacking in appeal to appellants. They demand a reversal and we think they are entitled to one. We discover nothing in the record upon which could be predicated a finding that the note and mortgage given to Tatta Van Hauen was an obligation given to the estate or the heirs. And it should be further noted that, so far as her interests as administratrix extend, the thing appellee demands in this case is that the note and mortgage come into her possession as administratrix and that it be administered upon by her in that capacity. Even had the evidence shown that the note and mortgage constituted an asset of the estate, it would likewise have shown that, by the agreement of the widow and all the heirs including the appellee, the note and mortgage had been made the property of the widow. This would amount to a withdrawal of that particular item from the other assets of the estate, and from its being administered upon by appellee, binding on the widow and heirs including the appellee-administratrix. Douglas v. Albrecht, 130 Iowa 132, 106 N. W. 354; Christe v. Chicago, R. I. & P. Ry. Co., 104 Iowa 707, 74 N. W. 697; Heinz v. Vawter, 221 Iowa 714, 266 N. W. 486. If there were any other persons or interests for whose benefit the administratrix might claim the right to administer upon the note and mortgage, she has failed to establish the fact. We infer from the record that there were no such persons or interests. If so, appellee has not shown she had the right she demands. The order of the probate court must be and is reversed and the cause remanded for entering an order in accordance with this opinion.—Reversed and remanded.

BLISS, HAMILTON, MILLER, MITCHELL, HALE, and STIGER, JJ., concur.

SAGER, J., takes no part.