In the Matter of the ESTATE of Carolyn G. NELSON, Deceased.

Cornelia OSTERKAMP and Richard Osterkamp, Proponents and Appellants,

v.

Harold A. WEEKS et al., Contestants and Respondents.

No. 11882.

Supreme Court of South Dakota.

Feb. 10, 1977.

Rehearing Denied March 10, 1977.

Samuel W. Masten, Canton, John D. Gubbrud, of Beck & Gubbrud, Alcester, for proponents and appellants.

James R. Adams, Sacramento, Cal., John H. Davidson, Jr., Vermillion, for contestants and respondents.

WINANS, Justice.*

This is an appeal from an order denying probate of an olographic will. Proponents dispute the findings of the trial court on the questions of testamentary intent and testamentary capacity. We reverse.

Proponents Richard and Cornelia Osterkamp petitioned to probate the olographic will of Carolyn G. Nelson in circuit court. Contestants, heirs at law of the decedent, filed in opposition to the probate, alleging that the instrument submitted was not in fact or in law a will. They also alleged that the decedent lacked the required testamentary capacity at the time the will was executed because she was under the influence of intoxicating liquor. After a hearing on these questions, the trial court found that the writing was not testamentary in character, was not executed with testamentary intent, and the decedent lacked the testamentary capacity essential to a valid will. Proponents appeal.

Carolyn G. Nelson was a resident of Vermillion, South Dakota. The Osterkamps were longstanding friends of the decedent. Cornelia did housework for the decedent, starting in 1955 and continuing until the early 1960's. The couple remained on friendly terms with the decedent until the time of her demise, December 25, 1974.[1]

On April 23, 1959, the decedent arrived at the Osterkamp home and requested that they accompany her to the Vermillion airport. She wanted the couple to drive her

car back to town and to check her mail during her absence. They agreed and Mrs. Nelson had lunch with the Osterkamps prior to her departure. After lunch, Mrs. Nelson, accompanied by Cornelia, drove her car to the Vermillion airport, Mr. Osterkamp followed in his vehicle.

Mrs. Nelson was about to board the small airplane when she told the pilot, George Nachtman, that she would not get on the plane without making a will. She returned to the airport office where she wrote the purported will. Mrs. Nelson then took the document outside, walked over to Cornelia, and put it into the latter's purse, telling Cornelia that it was her will and instructed her to keep it. Mrs. Nelson then boarded the plane and left. The document remained in the custody of the Osterkamps until it was offered for probate on January 8, 1975.

The pertinent part of the document reads:[2]

"4–23–59

To you—
    Cornie and Richard Ostercamp [sic] my all and my all to you
        Carolyn G. Nelson"

There is no question that the document is valid as an olographic will under SDCL 29–2–8. It is entirely written and signed in the decedent's handwriting and it is dated. Its validity is challenged however, in the context of lack of testamentary intent and testamentary capacity.

We will not disturb the findings of the trial court unless clearly erroneous. We approach that standard to decide whether in light of the entire evidence we are left with a definite and firm conviction that the trial court was mistaken in not admitting the document to probate as the olographic will of Carolyn G. Nelson.

■ To be valid a will must be executed with testamentary intent and must be testamentary in character.

---

* In accordance with SDCL 16–1–5.

1. Decedent stayed with the Osterkamps for about four months in 1962 when she broke her ankle and about two months in 1969 when her house burned.

2. The document also contained irrelevant stray markings and the signatures of two witnesses.

"Whether an instrument is testamentary in character is dependent upon the intention of the alleged testator, and it follows that each case must be considered separately on its own facts. This intention must be determined in the light of the words used in the writing, and any extraneous circumstances bearing upon the question of intention." *In re Zech's Estate,* 1945, 70 S.D. 622, 20 N.W.2d 229, 231.

The extraneous circumstances admissible to show intent include the oral declarations of the decedent. *In re Congdon's Estate,* 1952, 74 S.D. 306, 51 N.W.2d 877; *Scott v. Liechti,* 1944, 70 S.D. 89, 15 N.W.2d 1; SDCL 30–15–7. See also *In Re Sargavak's Estate,* 1950, 35 Cal.2d 93, 216 P.2d 850; *In Re Lampkin's Estate,* 1962, 203 Cal.App.2d 374, 21 Cal.Rptr. 513.

The burden of proving testamentary intent is on the proponent. Proponent must show not that the decedent realized she was making a will but that she intended the document to be a revocable disposition of the property, effective upon her death. *In Re Estate of Wolfe,* 1968, 260 Cal.App.2d 587, 67 Cal.Rptr. 297. While the decedent's intention is controlling, the intent must be apparent from the writing and the circumstances surrounding its execution, the will cannot arise from the intent to make one alone. *In re Hurley's Estate,* 61 S.D. 233, 248 N.W. 194; *Poole v. Starke,* 1959, Tex. Civ.App., 324 S.W.2d 234.

The writing must also be of a testamentary character to constitute a valid will. This requirement is satisfied if the writing makes a disposition of property after death. Once again, this is a process of determining the decedent's intention. *In re Vasgaard's Estate,* 1934, 62 S.D. 421, 253 N.W. 453. If through interpretation of the writing the intent is clear from the words used, in light of the surrounding circumstances, that intent controls.[3] If after the

process of interpretation doubt remains as to the decedent's intent, the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction. *In re Burns' Estate,* 1960, 78 S.D. 223, 100 N.W.2d 399; *Briggs v. Briggs,* 1950, 73 S.D. 500, 45 N.W.2d 62.

With this myriad of rules in mind, we turn to the evidence expressive of decedent's intent. It should be borne in mind that these events transpired almost twenty years prior to the hearing. Testimony shows that the decedent expressed a fear of flying on her way to the airport. Upon arrival she told the pilot she would not get on the plane without making a will. She then returned to the airport office and wrote the document produced for probate on the back of a time sheet. She had two witnesses sign the document. The decedent then took the writing to Cornelia Osterkamp, identified it as her will, and told her to keep it. She then boarded the plane.

The writing itself must be consulted to ascertain its testamentary character. A fair construction must reveal an intent to pass property at death. It is not necessary that technical words be used to make a disposition of property. SDCL 29–5–13. Words are to be taken in their ordinary, grammatical sense, SDCL 29–5–11, and an interpretation preventing total intestacy is preferred. SDCL 29–5–10.

Although the words used to express the decedent's intent are not a model of grammatical astuteness, in light of the various statutory presumptions we find that a fair reading of those words indicates a desire to pass property at death. It is clear who is to take by virtue of the writing—the Osterkamps. It is also fairly obvious what is to be taken: "my all" is certainly a disposition of all of her property. What the trial court found lacking were

---

**3.** SDCL 29–5–3 applies to interpretation of the provisions of the writing. That section provides: *"Uncertainty resolved from words of will and circumstances of making—Oral declarations not considered.—*In case of uncertainty arising upon the face of a will, as to the appli-

cation of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations."

words of disposition. It is true that the writing contains no verb; however, we find the phrase "to you" indicative of an intent to pass property.[4]

We turn now to the question of testamentary capacity. The burden of proving that the decedent possessed testamentary capacity at the time the writing was executed is on the proponents. *Jones v. S. D. Children's Home Society, Sioux Falls,* 1976, S. D., 238 N.W.2d 677. The trial court found that the decedent was not of a sound and disposing mind because of intoxication. We find that the record will not support such a finding.

Intoxication is certainly a factor to be considered in determining testamentary capacity but more than habitual use of alcohol or even intoxication on the day the will is executed is required to invalidate a will. It must be apparent from the record that decedent was so far under the influence of liquor at the time in question that she was incapable of comprehending the nature of her act, the extent of the property, and those who had a claim on her bounty. *In re Estate of Fleege,* 1975, S.D., 230 N.W.2d 230; *In Re Estate of Rhodes,* 1968, 222 Tenn. 394, 436 S.W.2d 429; see generally, Annot., 9 A.L.R.3d 15 (1966).

There is evidence that decedent had been drinking on the day in question. There is also evidence that she used alcohol to excess during this general time frame. There is no evidence, however, that decedent was so intoxicated that she did not appreciate what she was about. In fact, the evidence is to the contrary.

Decedent knew she was making a trip and made arrangements for the care of her vehicle and the mail during her absence. She showed no indications of drunkenness during her lunch with the Osterkamps. She drove her own car to the airport and boarded a small plane without incident. Although her handwriting that day was not typical of her style, the expert testified that the peculiarity was attributable to the haste with which it was written. Decedent also went to the trouble of having two people witness the writing,[5] and included the word "attest" above their signatures.

It is not the function of the court to speculate as to what the condition of the decedent may have been at the time the will was executed; we are only concerned with what that condition actually was, as demonstrated by the evidence introduced. There is no evidence that the decedent was so impaired by intoxication that she did not have testamentary capacity. Contestants' own witness admitted conducting business with decedent when she had been drinking. We find that the evidence preponderates in favor of proponents on this point.

We find that the writing presented for probate was in fact and in law the last will and testament of Carolyn G. Nelson. We reverse the order denying probate and remand for further proceedings not inconsistent with this decision.

DUNN, C. J., and WOLLMAN and ZASTROW, JJ., concur.

WINANS, Retired Justice, sitting as a member of the court.

PORTER and MORGAN, JJ., not having been members of the court at the time this case was orally argued, did not participate.

---

4. This is what is grammatically referred to as an ellipsis: the omission of one or more words that are obviously understood but that must be supplied to make a construction grammatically complete. It is proper for a court to supply words in a will as long as it is not done arbitrarily and done only when the meaning is clear. *In Re Estate of Miguet,* 1971, Iowa, 185 N.W.2d 508; *Henkel v. Auchstetter,* 1949, 240 Iowa 1367, 39 N.W.2d 650.

5. The only person testifying, who signed as a witness, had no recollection of the events of that day.