EWING, Respondent, v. WADDINGTON, Appellant.

(252 N. W. 28.)

(File No. 7575.   Opinion filed December 29, 1933.)

*John W. Addie,* of Armour, *Clair L. Kintz,* of Omaha, Neb., *Stanton L. Clark* of Tripp, and *Alan Bogue,* of Parker, for Appellant.

*James R. Bandy* and *Zenas R. Gurley,* both of Armour, and *Jerome H. Larkin,* of Wagner, for Respondent.

CAMPBELL, J.   Facts material to the determination of this cause may be summarized as follows: About 1899 or 1900, George W. Ewing and Rose Ewing, his wife, adopted defendant-appellant Waddington as their son.   About 1908, being approximately seventeen years of age, the boy Waddington departed from and abandoned the Ewing home and never returned thereto, although he

appears to have corresponded from time to time with his adopted mother, Rose Ewing. Shortly prior to 1908, George and Rose Ewing took into their home as a foster child, plaintiff-respondent, Clarence Cassman, then a small boy. This lad was adopted by George W. Ewing and his name changed to Clarence Ewing, but he was not adopted by Rose Ewing. Clarence Ewing resided in the home and family of his foster parents, George and Rose Ewing, until he grew to maturity and married and thereafter at all times continued to reside near them and to maintain intimate family relations with them.

George W. Ewing died testate in 1931, giving $100 to defendant Waddington, $1,000 to plaintiff, Clarence Ewing, and the balance of his estate (amounting to some $175,000) to his widow, Rose Ewing. The widow qualified and was appointed executrix of his will, and the bequests above mentioned were paid. About a month and a half thereafter Rose Ewing died. She also left a will whereby she gave $1,000 to defendant Waddington, like bequests to other relatives, and the residue of her property to plaintiff, Clarence Ewing, who was named executor without bond. The estate of Rose Ewing consisted of real and personal property of the approximate value of $190,000, about $15,000 of which was her own separate property, the remaining portion having been inherited by her under the George W. Ewing will.

On October 23, 1931, Clarence Ewing presented the Rose Ewing will for probate to the county court of Douglas county, her place of residence, and the usual formalities were had. Notice of time and place of hearing thereon was given to defendant, Waddington, who was furnished with a copy of the will and advised as to the nature, character, and probable value of the property. After being advised of the death of Rose Ewing and the contents of her will, defendant Waddington, who resided in Davenport, Iowa, wrote to Mr. James R. Bandy of Armour, S. D. (attorney for Clarence Ewing) as follows:

"I rec'd. your letter and as you told me to feel free to ask you any questions. I am going to ask you what I call a fair question and would like your aunest opinion. I understand that you are Clarence Attorney therefore expect you to an's in his favor.

"I am not at all satisfied with my share of the Ewing estate being a legal adopted son the same as Clarence is. I feel as though

I was entitled to a larger share than what was left me in the will. I would be willing to settle with a reasonably small per cent but not that small. if I can not agree with him I feel as though I will take it to cort and see what I can get.

"I would like to have your honest opinion and advice. I remain                                        "Yours very truly,"

Before receiving a reply from Mr. Bandy, defendant, Waddington, came to Armour, S. D. He stopped on the way to make some inquiries concerning his own adoption by the Ewings and also consulted with a brother of Mrs. Ewing. Arriving at Armour, he went first to the courthouse to ascertain the state of the records there concerning his adoption, and learned that the papers in reference to the matter were in the hands of Mr. John W. Addie, an attorney residing at Armour. From the courthouse, Waddington went to the office of Mr. Bandy, attorney for Clarence Ewing. Mr. Bandy, in reply to questions, advised Waddington that he (Bandy) had seen the papers relating to Waddington's adoption and, though he had not looked them over very carefully, he thought they were all right. Bandy said that he would call Clarence Ewing and have him come to his office and the parties could discuss the matter of a settlement. Clarence Ewing accordingly came to the office, and the matter of settlement was discussed at some length. Waddington's original demand was the sum of $15,000. It was finally agreed that Waddington should receive a certain piece of land (which he that day viewed), the sum of $1,000 given him by the will of Rose Ewing, and the further sum of $9,000, and the following written contract, duly witnessed, was entered into between the parties on that date:

"This Agreement, made and entered into in duplicate by and between Richard J. Waddington who is also known as Richard J. Ewing, of Davenport, Iowa, party of the first part, and Clarence Ewing of Delmont, South Dakota, party of the second part

"Witnesseth: That whereas the above named Richard J. Waddington is an adopted son of George W. Ewing and Rose M. Ewing, both now deceased, and as such is the sole heir of the said Rose M. Ewing, deceased, and whereas the said party of the first part is dissatisfied with the legacy of $1,000.00 left to him in the Last Will of the said Rose M. Ewing, deceased, which instrument

bears date the 12th day of October, A. D. 1931, and has applied to the party of the second part for an adjustment and settlement of what he contends to be his rights as an heir of the said decedent, Rose M. Ewing, and whereas the party of the second part being willing to arrive at a peaceable adjustment of the said difficulty, the parties hereto have arrived at the following agreement, to-wit:

"The party of the first part has this day and date signed a petition to the County Court of Douglas county, South Dakota, praying for the admission to probate of the instrument bearing date the 12th day of October, 1931, and purporting to be the Last Will and Testament of the said Rose M. Ewing, deceased, and in addition thereto by this agreement covenants that he will not contest or in any manner hinder the said party of the second part in his application for the probate of said instrument, or the will previously prepared by A. M. Shaw as the Last Will of the said Rose M. Ewing, deceased. In other words the party of the first part concedes, covenants and agrees that the instrument bearing date the 12th day of October, A. D. 1931, is in fact the Last Will and Testament of Rose M. Ewing, deceased, that it is valid and should be admitted to probate as such. The party of the first part covenants and warrants that he will not now or hereafter contest the said application of the said Clarence Ewing for the admission to probate of said Last Will and Testament bearing date the 12th day of October, 1931, or the so-called Shaw Will.

"In consideration of and as consideration for the foregoing agreement the party of the second part covenants and agrees that he will, if the Last Will of the said Rose M. Ewing, deceased, be admitted to probate and sustained against such attacks as may be made upon it, out of the money from said estate of Rose M. Ewing, deceased, received by him, together with the other property thereof, transfer to the said party of the first part by good and sufficient warranty deed, as soon as title thereto is legally vested in him, the following described real property clear of all incumbrance, to-wit:

"Lots Two, Three and Four (2, 3 & 4) of Section Six (6) in Township Ninety-Six (96) North, of Range Sixty-two (62) West of the 5th P. M., Charles Mix County, South Dakota.

"And that in addition thereto he will, as soon as legally permitted to do so, out of the money received from said estate, pay to the party of the first part the legacy of $1,000.00 and in addition

thereto the sum of $9,000.00 as soon as the party of the second part may legally do so out of the proceeds from said estate.

"That as Executor of the Last Will and Testament of said Rose M. Ewing, deceased, the party of the second part agrees, that if requested to do so before January 1st, 1932, he will deliver possession of said premises hereinbefore described to the party of the first part in which event the party of the first part shall be liable for taxes subsequent to those known as the 1931 taxes. Possession, of course, cannot be given until March 1st, 1932, because of an existing lease.

"The party of the first part agrees and admits that this settlement is made upon and in accordance with his demands and upon his own terms and conditions and after a full examination by himself of the real property in question this day personally made by himself.

"In Witness Whereof, the parties of the first and second parts have hereunto set their hands this 12th day of November, A. D. 1931, at Armour, Douglas County, South Dakota.

> "Richard J. Waddington
> "Clarence Ewing."

At the same time and place Waddington executed a writing joining in the petition of Clarence Ewing theretofore filed for the probate of the Rose Ewing will. About a week after the execution of the written contract above set out, defendant, Waddington, contrary to the agreements on his part therein contained, joined with certain brothers and sisters of the decedent Rose Ewing in filing with the county court of Douglas county written grounds of opposition to the probate of her will, and on December 8, 1931, Waddington caused the sheriff of Douglas county to serve upon Clarence Ewing a notice that he (Waddington) rescinded the written contract of November 12, 1931.

Thereafter, and on December 16, 1931, plaintiff, Clarence Ewing, instituted the present proceeding in the circuit court of Douglas county, S. D., seeking, in substance, the specific performance of the contract of November 12, 1931, and asking that defendant, Waddington, his agents and attorneys, be permanently enjoined and restrained from contesting the Rose Ewing will. A demurrer to the complaint was overruled; defendant answered to

the merits, and findings, conclusions, and judgment were in favor of plaintiff upon all the issues, from which judgment and from a denial of his motion for new trial, defendant, Waddington, has now appealed.

■ ■ Appellant urges that the circuit court had no jurisdiction of this proceeding, invoking the provisions of section 2035, R. C. 1919, subd. 1, reading as follows:

"An injunction cannot be granted:

"1. To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless such restraint is necessary to prevent a multiplicity of such proceedings."
—and pointing to the pendency of the contest proceedings in the county court of Douglas county at the time of the institution of the present action. It is to be observed that neither the county court of Douglas county nor the judge thereof is in any manner party to the present cause, and it may well be questioned whether the mandate of the circuit court to the appellant in this action could in any event be deemed an injunction "to stay a judicial proceeding," but we think we need not decide that point in this case. We do not have here any question between courts of full co-ordinate jurisdiction such as was presented in Gates v. McGee (1901) 15 S. D. 247, 88 N. W. 115. The injunction sought in the instant case is to restrain a breach of contract, which amounts to the accomplishment of what Mr. Pomeroy calls "a negative specific enforcement of that contract." The defense is that the contract was unfairly procured, and that appellant is entitled to rescind it and has rescinded it. The issues on the merits between the parties are entirely equitable in their nature and are such as have always been cognizable in a court of general equity jurisdiction, which, by the Constitution of this state, the circuit court is. The county court, on the other hand, is of limited jurisdiction. Whether the county court could conceivably adjudicate the equitable issues presented with relation to the validity of the contract involved in this case may very well be doubted. See Ward v. DuPree (1903) 16. S. D. 500, 94 N. W. 397; In re Thompson's Estate (1910) 26 S. D. 576, 128 N. W. 1127, Ann. Cas. 1913B, 446; In re Estate of Prerost (1918) 40 S. D. 536, 168 N. W. 630, 632. Cf., also, In re Blackinton's Estate (1916) 29 Idaho, 310, 158 P. 492; In re Randall's Estate (1897) 152 N. Y. 508, 46 N. E. 945 (and note in

this connection that in New York, as in California, the powers of the court of probate in equity matters were later appreciably enlarged by statute, which is not the case in South Dakota). See Hull v. Hull (1919) 225 N. Y. 342, 122 N. E. 252. Assuming without deciding that the county court of Douglas county might have determined in connection with its probate jurisdiction over the Rose Ewing estate the equitable issues raised in the present proceeding concerning the validity of the contract here involved, nevertheless, such jurisdiction certainly was not exclusive. In Ward v. DuPree, supra, the circuit court, with the approval of this court, entertained an action to set aside a release of interest in an estate during the pendency of the probate thereof, and in Re Estate of Prerost, supra, it was said: "Unquestionably the circuit court as a court of equity would have had jurisdiction to determine the question pending the administration of the estate." The issues between the parties upon this proceeding are such as ought properly to be determined in a court of general equity jurisdiction. The same reasoning that influenced this court to hold in Welsh v. Krause (1917) 38 S. D. 264, 161 N. W. 189, that the county court might proceed in a probate matter, notwithstanding the pendency in circuit court of an action to quiet title, would lead us to hold that the circuit court might proceed in this case, even should it be assumed that the county court might have jurisdiction to determine the issues as ancillary to or supplementary of its probate jurisdiction, and to hold otherwise or give section 2035, R. C. 1919, the construction contended for by appellant in this case, would render the statute to that extent unconstitutional as an attempt to deprive the circuit courts of this state of a jurisdiction conferred up them by the State Constitution. Jacquish v. Deming (1918) 40 S. D. 265, 167 N. W. 157; State ex rel Vig v. Lehman (1922) 45 S. D. 394, 187 N. W. 720. Cf. State v. Nieuwenhuis (1926) 49 S. D. 181, 207 N. W. 77. A contract to refrain from contesting a will is valid and enforceable in equity (see annotation, 55 A. L. R. 811), and we are of the opinion that this action to enforce such a contract was properly instituted in a court of general equity jurisdiction, notwithstanding the fact that the existence of such contract might have been pleaded in the county court as against the contest petition, and regardless of whether or not, when so pleaded, the county court might or might not have had sufficient equitable juris-

diction to determine the validity of the contract on the issues here presented.

■ Being satisfied of the circuit court's jurisdiction, we pass to the other assignments of error. Appellant complains that he was not permitted to inquire as to the amount of Bandy's fees as attorney for respondent, Throughout all the transactions here involved, appellant understood and fully realized (as plainly indicated by his own letter before ever he left Davenport) that Bandy was attorney for respondent, and that respondent's interests were Bandy's interests. The amount of the fee which respondent had paid or agreed to pay Bandy could not possibly be material to any issue in this case, and the learned trial judge committed no error when he refused to permit appellant to pursue that inquiry.

■ Appellant urges that contracts of the type here involved are contrary to public policy and void, citing Taylor v. Hoyt (1932) 207 Wis. 520, 242 N. W. 141. Whether that case is distinguishable upon the facts from the present case we need not pause to inquire. Whatever may be the rule in Wisconsin, "by the great weight of authority, a bona fide agreement by one interested in the estate of a testator, to refrain from contesting the will, is valid. It is not void as against public policy, since it lessens litigation; and the forbearance to sue, being a detriment to the promisee, is a sufficient consideration to support the promise." Annotation, 55 A. L. R. 812 (1928), and cases there cited. This court has previously aligned itself with the weight of authority on the point (Korte v. O'Neill [1914] 34 S. D. 241, 148 N. W. 12. Cf. also Ward v. DuPree [1903] 16 S. D. 500, 94 N. W. 397; Marker v. VanGerpen [1918] 39 S. D. 648, 166 N. W. 151), and we believe that position has the support of the better reason, and are not now disposed to recede from it.

■ Appellant urges that there was a fiduciary relation between himself and respondent. We are not able to detect any fiduciary relation between the parties from the facts shown by this record.

Appellant further urges that he entered into the contract in question because of his mistaken view of the law and the facts, his lack of proper advice, and lack of information as to his own rights; that the agreement was procured from him by fraud and deceit for

a grossly inadequate consideration, that it was highly unconscionable and inequitable, and that his attempted rescission thereof was justifiable. On all these points the findings of the learned trial judge were adverse to appellant, and we are persuaded that the findings are amply supported by the evidence. Appellant relies much upon such cases as Marker v. VanGerpen, supra; Griffing v. Gislason (1906) 21 S. D. 56, 109 N. W. 646; and Kinkaid v. Rossa (1913) 31 S. D. 559, 141 N. W. 969, Ann. Cas. 1915D, 1098. All of those cases are distinguishable upon the facts from the situation here presented. Appellant seeks to stand before this court in the position of a man who was clearly and unquestionably the sole heir to an estate worth $190,000, who did not realize that fact, and who was deprived of his rights in such estate for the sum of $15,000 by persons who were fully aware of the facts and fully aware of appellant's ignorance of the facts, and appellant seeks to assume on this appeal that the Rose Ewing will was entirely invalid to respondent's knowledge. Those assumptions are not justified by the record in this case. Appellant, knowing the value of the Rose Ewing estate, knowing of the existence of the Rose Ewing will and the contents thereof, knowing, or at least believing, that he had been duly adopted by Rose Ewing and her husband, felt, as he himself said, that he was dissatisfied with his legacy; that he was entitled to a larger share of the estate than was left him by the will; that he would be willing to settle for a reasonably small amount; and that, if he could not agree upon a settlement, he would take the matter to court and see what he could get. Settlement was made with him substantially on his own figures, and he contracted to accept, in addition to the legacy left him in the will, the sum of $9,000 in cash, plus a quarter section of land as the consideration for refraining from contesting the will. There is not a syllable of testimony in the record in this case justifying any inference that appellant could have succeeded in any contest of this will or that the consideration contracted to be paid to appellant was not in fact an exorbitant payment for all the rights appellant had or could hope to establish in the Rose Ewing estate.

We think the judgment and order appealed from should be affirmed.

All the Judges concur.