**BRAATEN et al. v. BRENNA et al.**

No. 7386.

Supreme Court of North Dakota.

March 1, 1954.

T. H. H. Thoresen, Grand Forks, for appellants.

Wm. T. DePuy, Grafton, for respondents.

SATHRE, Judge.

This action grew out of a controversy between residents and landowners in Americus Township, Grand Forks County and the Board of Drain Commissioners of Grand Forks County, relative to the construction of a proposed drain designated as Drain No. 27. The proceedings for establishing said drain were had under the provisions of Chapter 61–21 NDRC 1943 dealing with drains and drainage projects.

Section 61–2103 NDRC 1943 of said Chapter provides for the appointment by the board of county commissioners of a board of drain commissioners consisting of three members.

Section 61–2110 provides for filing with the drain board a petition by landowners for the construction of drains.

Section 61–2111 provides for examination by the board of the line of the proposed drain, designating a surveyor and establishing the commencement and terminus of the proposed drain.

Section 61–2114, 1953 Supp. NDRC 1943 provides for notice and hearing on the petition and is as follows:

"Upon the filing of the surveyor's report provided for in section 61–2113, the board shall fix a date and public place for hearing objections to the petition. Such place for hearing shall be in the vicinity of the proposed drain and shall be convenient and accessible for the majority of the landowners

affected by such drain. At least ten days' notice of such hearing shall be given by causing a notice to be published at least once in the official newspaper of the county in which such proposed drain is located. In addition, a notice shall be sent by registered mail to the post office address, as shown by the records of the register of deeds or county treasurer of the county of each owner of land which may be affected by the proposed drain. Notices of such hearing shall contain a copy of the petition and a statement of the date of filing of the surveyor's report and the date when the board will act upon the petition, and shall be signed by the members of the board or a majority thereof. All persons whose lands may be affected by any such drain may appear before the board and may express fully their opinions and offer evidence upon the matters pertaining thereto."

Section 61–21151, 1953 Supp. NDRC 1943 defines voting right of powers of landowners and is as follows:

"In order that there may be a reasonably fair relation between the amount of liability for assessments and the power of objecting to the establishment of a proposed drain, the voice or vote of affected landowners on the question of establishing the drain shall be arrived at in the following manner:

"1. Every landowner shall have at least one vote or voice.

"2. In addition thereto each landowner shall have one additional voice or vote for each $100.00 or major fraction thereof of assessment that his land is subject to as established by the board under the provisions of section 4 of this Act (61–21131.)"

Section 61–21161 1953 Supp. NDRC 1943 provides for notice of order establishing drain and of period for appeal and is as follows:

"Whenever the order shall be made establishing a drain, the board shall immediately thereupon give notice to all affected landowners of such action, such notice to be given in the same manner as the notice of the hearing on the petition to establish the drain, and such notice shall advise each landowner that his right to appeal to the district court from such order will expire in thirty days and the date of expiration of such right of appeal shall be given. Any affected landowner not given such notice shall have his right of appeal preserved for thirty days after such notice is later given him, by registered mail, at his last known address or until the time of hearing on assessments, whichever shall come last."

On March 22, 1951 there was presented to the Board of Drain Commissioners of Grand Forks County a petition signed by the requisite number of freeholders as required by Section 61–2110 NDRC 1943 for the construction of a drain extending from a point 1165.7 feet north of the corner common to sections 3, 4, 9 and 10, in said Americus Township; thence south along the east sides of sections 4, 9, 16 and 21 terminating at the southeast corner of section 21 in said Americus township, the total length thereof to be approximately 3.28 miles. The project also provided for the closing of certain culverts and a bridge through which the waters would otherwise flow to the east of said proposed drain. The drain was duly surveyed and engineering estimates prepared by engineers employed by the Board of Drain Commissioners.

Twenty-six landowners in the vicinity of said proposed drain presented to and filed with the Board of Drain Commissioners protest against the establishing of said drain. They alleged that the establishment of the drain is contrary to the laws of the State of North Dakota in that it diverts the stream of a natural watercourse; that said drain if established according to the plans and specifications will cause irreparable injury and damages to property owners both within the drainage district and those not subject to assessment; that the said drain is unnecessary and will be of very little, if any, benefit to anyone for the reason that there are sufficient

ditches now if kept open and clean to take care of any normal water fall, and that no amount of drainage will take care of excess floods which occur only at very unusual times; that the cost of the construction of said drain is excessive and beyond the benefits to be derived; that the protestants will receive no benefit from said ditch of any consequence and that they are taxed without receiving any return therefor.

On June 18, 1951 a public hearing was had to permit objectors to the construction of said proposed drain to appear before the Board of Drain Commissioners and to enter protests and to show cause why said drain should not be constructed. Notice of said hearing was published in the official newspaper of the county and notice by registered mail was sent to all affected parties as required by Section 61–2114, 1953 Supp. NDRC 1943. The affected parties as determined by the Board were those whose lands would be assessed for the cost of construction of the drain. Pursuant to notice given a meeting was held by the Board of Drain Commissioners on July 5, 1951 at its office in the city of Grand Forks, at 2 o'clock P.M. which meeting was recessed until July 9th, 1951 at 2 o'clock P.M. at which meeting final tabulations were made of the objections to the establishment of said Drain No. 27 and the voting powers of landowners as defined by Section 61–21151, 1953 Supp. to NDRC 1943.

Applying the formula set forth in said section 61–21151 it was found that a total of 140 votes were cast on the question of establishing said proposed drain No. 27, 89 of which votes were for and 51 votes were against establishing such drain.

The meeting of the Board of Drain Commissioners recessed to July 9th was again recessed until August 21, 1951 at 2 o'clock P.M. Pursuant to recess the board reconvened in its office in the court house in the city of Grand Forks, North Dakota on August 21, 1951 at 2 o'clock P.M. Present at such recessed meeting were the members of the Board of Drain Commissioners, namely Ed Brenna, Sam Loyland and Henry Shane and Nick Ludowese, Clerk.

At this meeting the Board reexamined all proceedings had to date with regard to the establishment of the proposed Drain No. 27. The Board then determined that there was sufficient cause for the making of the petition for the proposed drain, and that it would not cost more than the amount of the benefits to be derived therefrom. The Board thereupon made and entered the following order for the establishment of Drain No. 27, which is as follows:

"Whereas, the Board of Drainage Commissioners in and for the County of Grand Forks, State of North Dakota, did receive on the 22nd day of March, 1951, a petition signed by not less than six freeholders in Americus Township requesting the construction of a legal drain in that Township and...

"Whereas, the route of the proposed drain is as follows: Commencing 1165.7 feet north of the corner common to Sections 3, 4, 9 and 10, Township 149 North, Range 50 West, thence south along the east sides of Sections 4, 9, 16 and 21, terminating at the southeast corner of Section 21, Township 149 North, Range 50 West, the total length of the ditch to be approximately 3.28 miles and

"Whereas, the project is also to provide for the closing of certain culverts and openings through the road in order to properly function and

"Whereas, said drain has been duly surveyed and engineering estimates prepared, and

"Whereas, a public hearing for objectors to the establishment of said drain was held on June 18, 1951, notice of which was published in the official newspaper and registered mail notifications sent to all affected parties and

"Whereas, after the date of July 5, 1951, which date was set by the Drainage Board as the last for filing of written objections to the establishment of said drain, the objections filed were determined by said Board to be in the minority.

"Now Therefore be it Ordered and it is hereby so ordered that in view

of the foregoing the above described drain is hereby established and shall henceforth be known, recorded and indexed as Grand Forks County Legal Drain No. 27."

It was then ordered by the Board that notice be given to all affected landowners of the making of the order establishing said drain, said notice to be given in the same manner as the notice of hearing on the petition to establish the drain and that such notice shall advise each landowner that his right to appeal to the District Court from the order establishing the drain will expire in 30 days and the date of expiration of such right of appeal was given as September 29, 1951 and the Clerk was directed to prepare and serve and publish such notices as provided by law.

Plaintiff's exhibit C is a map showing the location of the proposed drain and the area that the petitioners contend it will serve. From this exhibit it appears that nine descriptions of land adjoining the east side of the proposed drain and ten descriptions of land adjoining the west side of the drain are owned or controlled by parties who protested the construction of the drain.

Five of the twenty-six objectors, Oswald Braaten, Bessie Fladeland, Julia Johnson, Norris Hegg and E. H. Fladeland, the plaintiffs in this action, appealed to the District Court of Grand Forks County from the order of the Board of Drain Commissioners establishing said drain No. 27. The case was tried to the court without a jury before the Hon. John C. Pollock, Judge of said District Court.

In the District Court the plaintiffs contended that the establishment of said drain was contrary to the laws of the State of North Dakota in that it diverts the stream of a natural watercourse; that if the said drain is established according to the plans and specifications adopted by the Board it will cause irreparable injury and damages to property owners both within the drainage district and those not subject to assessment; that in conformity with the order of the Board dated May 31, 1951 a majority of affected landowners filed protest against

the establishment of said drain, but that said Board wrongfully and illegally declared said objectors to be in the minority and ordered said drain established as Grand Forks County Legal Drain No. 27.

The physical facts as established by the undisputed evidence and the exhibits in the case are as follows:

The area to be served by the proposed drain No. 27 slopes gently to the north and east. There is a natural watercourse which has its inception in Traill County in the vicinity of the Village of Reynolds; from there it meanders northeasterly across a portion of Grand Forks County intercepting the line of the proposed drain near the southeast corner of Section 16 in said Americus Township. At the point where this watercourse crosses the section line common to Sections 15 and 16 there is a small bridge, and a culvert through which said watercourse continues on into said section 15 for approximately 15 rods where it levels off and loses a distinct channel; it appears that an artificial ditch had been constructed which tends to lead the water in a northeasterly direction where it enters an established drain on the east side of said section 15 known as the Belmont Drain and flows east and empties into Sannes Coulee. The plans for construction of said proposed drain No. 27 include the closing of all east-west culverts and the bridge along the line of said drain and the diversion of water which otherwise would flow east and north, directly north into Sannes Coulee some three miles to the north of said bridge. Sannes Coulee has its origin in the western part of Traill County and enters Union Township in the southwestern part of Grand Forks County. From there it follows a natural water course known officially as Cole Creek but commonly known as Sannes Coulee. This natural watercourse enters Americus Township in Section 7 and meanders northeast through sections 7, 8, 4 and 3 and finally leaves Americus Township at the northwest corner of section 2 and from there runs straight north for six miles finally emptying into the Red River. This watercourse is a little more than 2 miles north of the watercourse to which we have

referred as entering section 15. Drain No. 27 as designed will be 4 feet deep, 6 feet wide at the bottom, 32 feet wide at the top with a 3 to 1 side slope. The drain has a fall of 1 foot per 2000 feet towards the north which would make a total fall between the point of beginning and the point where it enters Sannes Coulee of 6½ feet. The natural drop of the land between these two points is approximately 5 feet.

The trial in the district court proceeded on the theory that the burden of proof was on the defendants. At the opening of the trial the following discussion between counsel and court took place:

"Mr. DePuy: Is it understood that we proceed with the appeal?

"The Court: Yes.

"Mr. DePuy: I presume this will be tried under the statute as a de novo, and the burden probably falls upon us to proceed.

"The Court: Yes. This is different from the ordinary appeal. As I understand it, it is a trial de novo.

"Mr. DePuy: Yes.

"Mr. Thoresen: That is right."

The trial court found in favor of the defendants and made findings of fact that there was sufficient cause for making the petition to establish legal drain No. 27 in Americus Township, and that the proposed legal drain No. 27 will cost less than the amount of benefits derived therefrom, and upon such findings ordered judgment in favor of defendants for dismissal of plaintiffs' appeal.

Judgment was entered accordingly and plaintiffs appealed and demanded a trial de novo in this court.

Appellants do not challenge the jurisdiction of the drain board or the regularity of the proceedings in establishing drain No. 27. It must be assumed therefore that the drain board acted upon a proper and sufficient petition and complied with the procedural requirements of law in making its order for the establishment of the proposed drain.

Appellants contend first that the findings of fact of the trial court were insufficient upon which to base its conclusions of law and order for judgment.

The case was tried to the court without a jury, and in such cases appeals to the Supreme Court are governed by section 28-2732 NDRC 1943 which provides among other things that:

"If the appellant shall specify in the statement that he desires to review the entire case, all the evidence and proceedings shall be embodied in the statement. The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and shall either affirm or modify the judgment or direct a new judgment to be entered in the district court. * * * In actions tried under the provisions of this section, failure of the court to make findings upon all the issues in the case shall not constitute a ground for granting a new trial or reversing the judgment."

■ In an appeal under the provisions of section 28-2732 this court is not limited to a consideration of whether the trial court's findings of fact are sufficient. Appellants demanded a trial de novo in this court and under said section 28-2732 the supreme court must try the case anew upon the entire record; and while the judgment of the trial court is entitled to appreciable weight, the supreme court may either affirm or modify the judgment or direct a new judgment to be entered in the district court; and if justice require it, may order a new trial of the action. Appellants' contention is therefore without merit.

■ It is next contended that the court erred in holding that landowners whose lands were affected but not subject to assessment for the cost of construction of the proposed drain were not entitled to notice of the proceedings or a voice therein To this we cannot agree.

Section 61–21141, 1953 Supp. NDRC 1943 provides among other things,

"When the hearing provided for in section 61–2114 * * * is held, the board shall first prepare a roster or roll of affected landowners and shall limit voting rights to such landowners. A record shall be made by the board of affected landowners present in person or by agent and such records shall be preserved in the minutes of the meeting. Affected landowners shall then be informed of the probable total cost of the project and their individual share of such costs. * * *"

Section 61–21151 1953 Supp. NDRC 1943 defines the voting powers of landowners and provides that:

"each landowner shall have at least one vote, and in addition thereto each landowner shall have one additional vote for each $100.00 or major fraction thereof of assessment that his land is subject to as established by the board."

The language of these two sections clearly implies that an affected landowner is one whose land is subject to assessment for his proportionate share of the cost of the construction of the proposed drain.

The appellants in this case are Oswald Braaten, Bessie Fladeland, Julia Johnson, Norris Hegg and E. H. Fladeland. Their lands will be subject to assessment for the cost of constructing the drain and they were given due notice of all of the proceedings as required by law. They appealed for themselves only. None of the landowners who it is claimed will be affected by the construction of this drain, but whose lands will not be subject to assessment, are parties to this action.

■ Two landowners who claimed their lands would be adversely affected but not subject to assessment joined in the written protest against construction of the drain, but they were not parties to the appeal to the district court and are not parties here. The issues in this case involve only the rights of the plaintiffs and can have no application to parties who are not joined either as plaintiffs or defendants and who will not be adversely affected by the judgment.

■ It is next contended that the cost of construction of said drain is excessive and beyond the benefits to be derived and that there are sufficient ditches and drains at the present time, if kept open, to take care of any normal flow of water and no amount of drainage will eliminate spring floods which occur at unusual times.

Respondents exhibit D, is the Survey Report and Cost Estimate of proposed Drain No. 27 prepared by John Dillon, District Conservationist, and the items of the Cost Estimate are as follows:

Grand Forks County Drain No. 27
Americus Township.

| | | | | |
|---|---|---|---|---|
| 1. Excavation | 41,480 | cu. yds. | @16¢ | $ 6,636.80 |
| 2. Spoil bank leveling | 3.23 | mi. | @400.00 | 1,292.00 |
| 3. Field inlets | 300 | cu. yds. | @20¢ | 60.00 |
| 4. Private drives installed | | | | |
| concrete culverts | 120 | ft. | @12.00 | 1,440.00 |
| 5. Right of Way | | | | |
| Section 4 | 0.86 | acres | | |
| Section 9 | 3.97 | acres | | |
| Section 16 | 3.98 | acres | | |
| Section 21 | 3.95 | acres | @100.00 | 1,276.00 |
| Total | 12.76 | acres | | $10,704.80 |

Section Line Culverts
600 ft. concrete pipe installed @12.00 per foot          $ 7,200.00

Total Cost          $17,904.80

Respondents' exhibit. C, is .the minute book of the drain board containing a record of all of the proceedings had in connection with the establishing of Drain No. 27.

With reference to the water that would be diverted into the Sannes Coulee by Drain No. 27, Martin Lund, an engineer and a witness for respondents testified as follows:

"Q. Such water as is intercepted and goes north along the Belmont road goes where? A. Runs into Sannes Coulee in the Northeast of Section 3.

"Q. In other words, it enters the same coulee as would the waters from the proposed drain but at a point approximately a mile and a half north and east? A. Yes, about that.

"Q. Was any study made of the capacity of the Sannes Coulee at the point where the proposed Drain No. 27 enters it? A. Yes, a survey was made and determined the possible capacity of the Sannes Coulee at the place this drain would run in, and the findings were as follows: Figures at this point where the ditch would come in the coulee calibrated that 110 square miles of drainage area comes in at this point where said proposed drain would come in as it is planned now, and that would include part of this area that is included in this ditch and the capacity required is 616 cubic feet per second at that particular point, and the capacity of the coulee at that point is 1545 cubic feet per second, showing that the coulee is about double the capacity of what is coming in at that point.

"Q. That is, under present conditions the coulee is double the capacity of the supply from the drainage? A. That is right.

"Q. How much will be added to that supply at the point where Drain No. 27 is to enter the coulee by the construction of Drain No. 27? A. 144 Cubic feet per second.

"Q. So after the drain is constructed the capacity will be increased will be increased by 144 C.F.S. over the 616 now required, is that right? A. 616.

"Q. In other words, your testimony is that after the construction of the drain the coulee will need a capacity of 760 C.F.S? A. Yes.

"Q. What is the capacity at the point where it comes in? A. 1545 cubic feet per second."

Testifying further Mr. Lund stated that he had considerable experience with drainage problems in the eastern part of Grand Forks County and drawing upon such experiences he stated that proposed Drain No. 27 had been planned and engineered according to scientific methods and that it would be a desirable drain. As to the practicability of the drain he stated that its location was such that there were no obstructions that would hinder a natural drainage and that there were no farmstead trees to cause snow drifts and other obstructions in the ditch and that it would keep open and permit free flow of the water.

With reference to the culverts and bridge near the point of beginning of the proposed drain through which the water escapes towards the east and which will be closed by said drain, the engineer Martin Lund testified as follows:

"Q. You will remember that there has been some testimony this afternoon relative to certain culverts or a culvert situated in proximity to the end of the drain. Do you remember that? A. Yes, I do.

"Q. Will you explain to the court what the plans call for relative to culverts at the south end of the drain? A. There is a concrete arch culvert five feet by three and a half feet.

"Q. Where is that culvert located? A. At the southeast corner of section 21. And the culvert will be plugged to the effect that the spill bank will be placed in the east road ditch. And

there is a concrete box culvert six feet by four feet which runs north and south from section 28 into section 21. And there is another concrete box culvert six by four feet, which runs from the northeast corner of section 28 into the northwest corner of section 27, and those two concrete box culverts, there is nothing supposed to be done to those.

"Q. The culverts on the south line of section 21 and 22, running east and west, will remain open, or on the north side of 28 and 27, whichever way you want to call it? A. Those are open, yes.

"Q. They will be open? A. Yes.

"Q. There is just one there going east and west? A. Between 28 and 27, yes.

"Q. They will remain open? A. Yes.

"Q. The one on the south side of 21 and 22, east and west, will be plugged? A. Yes, it will be plugged by the spoilbank.

"Q. And there are—there is a culvert running north and south on the west side of the corner of 28 and 21? A. Yes.

"Q. That will remain open? A. That will remain open."

The record presented in this court contains a large amount of testimony, twenty witnesses having testified in considerable detail. We have carefully examined the lengthy record. There are few facts in dispute, and it will serve no good purpose to rehearse the testimony in detail. The testimony of Martin Lund the engineer, explained fully the construction of the proposed drain, its practicability and its capacity. He had calculated the capacity of Sannes Coulee into which the water would be carried by the drain. Under all ordinary circumstances the capacity of Sannes Coulee is nearly twice as great as the amount of water that would empty into it, including the additional water from the proposed drain. The testimony of the witnesses of the appellants is not convincing and we are of the opinion that the evidence is sufficient to warrant the drain board in establishing the drain. As we have pointed out it is not disputed that the proceedings were legally sufficient to authorize the drain board to take action thereon. The members of the board together with the engineer inspected the route of the drain, made a survey and prepared plats, profiles and specifications, determined the area that would be served, the affected landowners, the approximate cost and that the benefits that would be derived would be in excess of the cost. Boards of Drain Commissioners are legally constituted bodies with authority to carry out the provisions of the drainage laws of the state.

Section 61–2111 NDRC 1943 provides that:

"Upon the presentation of a petition as provided in section 61–2110, the board, as soon as practicable, shall proceed to examine the line of the proposed drain, and if in its opinion it is necessary for the public good, it shall adopt a resolution to that effect and also shall adopt a resolution designating a competent surveyor who shall survey the line thereof and establish the commencement and terminus and determine the route, width, length, and depth thereof."

The statute quoted vests the board with the power to establish drains, if in its judgment and discretion it is necessary for the public good.

The objectors, appellants, appealed to the district court from the order of the drain board establishing the drain and all of the evidence was heard and considered by the trial court.

Section 61–2117 NDRC 1943 provides that:

"Where such appeal is perfected, the district court upon the hearing may try and determine the question as to whether, in the first instance, there was.

sufficient cause for making the petition for the establishment of the drain, and whether the proposed drain will cost more than the amount of the benefits to be derived therefrom."

The district court made findings that there was sufficient cause for making the petition to establish Drain No. 27, and that said drain would cost less than the benefits to be derived therefrom. We have examined the evidence and the entire record and we are of the opinion that the findings of the trial court are correct.

■■ Finally appellants contend that the establishment of the drain is contrary to the laws of this state in that it diverts the stream of a natural watercourse.

Section 61–0106 NDRC 1943 defines watercourses as follows:

"A watercourse entitled to the protection of the law is constituted if there is a sufficient natural and accustomed flow of water to form and maintain a distinct and a defined channel. It is not essential that the supply of water should be continuous or from a perennial living source. It is enough if the flow arises periodically from natural causes and reaches a plainly defined channel of a permanent character."

Section 61–0107 relates to obstruction of courses without authority of law.

"If any person, municipality, or corporation, without authority of law, willfully obstructs any ditch, drain, or watercourse, or diverts the water therein from its natural or artificial course, such person or corporation shall be liable to the party suffering injury from such obstruction or diversion for the full amount of the injury occasioned thereby, and in addition thereto, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars, or in lieu thereof, the offending party, if not a corporation, may be imprisoned in the county jail for a period of not more than three months."

Section 61–0102 provides that,

"Beneficial use shall be the basis, the measure, and the limit of the right to the use of water. All waters appropriated for irrigation purposes shall be appurtenant to specified lands owned by the person claiming the right to use the water, so long as the water can be used beneficially thereon. Priority in time shall give the better right."

Section 61–2101 NDRC 1943 provides:

"The word 'drain' shall include any natural watercourse *opened, or proposed to be opened, and improved,* for the purpose of drainage, and any artificial drains constructed for such purpose * * *."

It will be observed that section 61–0107 prohibits the obstruction of a natural watercourse without authority of law; but section 61–2102 authorizes construction of watercourses, ditches and drains for the drainage of sloughs and lowlands whenever the same shall be conducive to the public health, convenience or welfare. The board of drain commissioners is made the tribunal by statute to administer the drainage laws of the state and to take such action with reference to the opening, and improvement of drains and natural watercourses as may be necessary to prevent flooding of lands within the district and may intercept the stream of a natural watercourse or divert the flow of its waters into other channels if in its judgment and discretion it is necessary for the public good.

The natural watercourse claimed by appellants to be illegally obstructed is the one referred to herein as crossing the proposed drain near the corner common to sections 15, 16, 21 and 22 at a point about a mile north of the point of beginning of said drain. At this point some of the water escapes through the bridge and culvert which will be closed by the proposed drain and spreads over the land in a northeasterly

direction entering the Belmont drain and finally emptying into Sannes Coulee. If Drain No. 27 is constructed the waters of this natural watercourse will flow into Sannes Coulee as before but at a point about a mile farther to the west.

As pointed out herein, the natural watercourse intercepted by Drain No. 27, loses its identity as a definite stream after entering section 15. From there the water spreads over the terrain flowing east and north into Belmont drain, then north into Sannes Coulee.

The construction of Drain No. 27 will not increase the volume of water emptying into Sannes Coulee; but less water will be discharged into it through Belmont drain and more through Drain 27, but the total volume of water emptying into the coulee will remain the same. The rerouting of this watercourse by the drain board, acting within its jurisdiction cannot be held to be an unlawful obstruction of a natural watercourse.

We are of the opinion that under the evidence and the powers conferred upon the board of drain commissioners by law the district court correctly affirmed the determination made by the board of drain commissioners.

The judgment of the district court is affirmed.

MORRIS, C. J., and BURKE and GRIMSON, JJ., concur.