**ZIMMERMAN et al.   v.   KITZAN et al.**

No. 7407.

Supreme Court of North Dakota.

July 24, 1954.

Rehearing Denied Aug. 25, 1954.

 

ed and qualified administrator of Gottlieb Zimmerman's estate and is entitled to the possession of all of Gottlieb's property, including some personal property set out in the complaint. Then it is alleged that at the commencement of the probating of the estate the defendant, Emma Kitzan, represented that she was the surviving daughter of Gottlieb Zimmerman and had a right to select an administrator and did so select the defendant, Christ Kitzan, to act as co-administrator. It is further alleged that at the time of the commencement of such proceedings Emma Kitzan's attorney, Kurt Krauth made false and fraudulent representations that the other defendants were entitled to inherit certain portions of the property of Gottlieb Zimmerman and thereby induced the plaintiff, Solomena, to enter into a family contract for the distribution of the estate; that Solomena, upon learning the falsity of said representations and of her legal rights rescinded said contract and the plaintiffs ask that said contract be cancelled.

The defendants answer making a general denial and set up the circumstances leading to the execution of the contract in question claiming that it is valid and binding. Defendants pray that the contract be declared valid and binding and title be quieted in the parties and they be given possession in accordance therewith.

J. K. Murray, Bismarck, for appellants.

Milton K. Higgins, Bismarck, for respondents.

GRIMSON, Judge.

The plaintiffs allege for their first cause of action that Solomena Zimmerman is the owner of certain real estate in Morton County, North Dakota; that the defendants claim certain estates or interests therein. They ask that title be quieted in Solomena against such claims. For a second cause of action they allege that plaintiff, Solomena Zimmerman, is the widow of Gottlieb Zimmerman and the owner of said real estate by virtue of being his only surviving heir; that John F. Schneider is the duly appoint-

Plaintiffs reply by a denial and a claim that the county court has found said contract void. The validity of the contract was the sole issue presented on the trial.

This action was commenced March 25, 1946. The case was first tried before Hon. J. O. Wigen. It was submitted to a jury who found for the defendants. Judge Wigen treated their verdict as advisory only but in a memorandum decision the court approved such finding. The plaintiffs made a motion for a new trial which was granted. Defendants appealed from the order granting a new trial. On that appeal the order for a new trial was affirmed in Zimmerman v. Kitzan, 77 N.D. 477, 43 N.W.2d 822. The defendants then moved the court to vacate the order for a new

trial which motion the district court granted. Thereupon plaintiffs appealed. This court reversed that order, Zimmerman v. Kitzan, N.D., 56 N.W.2d 208. The case then came on for a new trial before Hon. Harvey J. Miller, without a jury, April 8, 1953. Judge Miller found for the defendants and this appeal is from a judgment in their favor. A trial de novo is demanded.

The evidence shows that in 1899 Gottlieb and his first wife, Elizabeth, came from Russia and settled south of Hebron in Morton County where they lived until Elizabeth's death in 1939. They accumulated some property. They had no children. Before they left Russia, Gottlieb's sister had given birth to a daughter, Emma, who was being raised by her grandfather. After Gottlieb and his wife had become settled, correspondence was had by Elizabeth, writing for herself and Gottlieb to Emma's mother in Russia. Because they had no children they asked that Emma be sent to them. An agreement was reached that Emma should come to America and be raised by Gottlieb and his wife. It is claimed that the agreement included a promise that she would be adopted by Gottlieb. Emma came to the United States with some other relatives when she was 12 years of age; Gottlieb paid her fare. Thereafter she lived with Gottlieb and his wife as a daughter until she was married to the defendant, Christ Kitzan, when she was 18 years of age. Elizabeth Zimmerman died in 1939 and in 1941 Gottlieb married Solomena, a widow, who at that time was 62 years of age and the mother of 13 children. She had lived at Anamoose, North Dakota. They lived together in Hebron until Gottlieb died July 12, 1945. Two years after this second marriage Gottlieb had prepared and signed deeds and a bill of sale conveying his property to his wife, Solomena, and to Emma and to her children, Walter, Hilda, and Florence. With these instruments he signed a letter of direction addressed to John F. Schneider, instructing him to keep the instruments therein enclosed until Gottlieb's death and then to deliver them to the grantees named in said instruments. Before Gottlieb went to the hospital he gave Sol-

omena the key to a locked iron box he kept in his trunk in his bedroom. Shortly after his death the Kitzans arranged a meeting of all the interested parties and Mr. Schneider at the law office of Kurt Krauth in Hebron.

John F. Schneider brought the iron box. It was opened at this meeting and the instruments aforementioned were found. No delivery of them had been made to Mr. Schneider during Mr. Zimmerman's lifetime. A conference ensued at which these instruments and the distribution of the estate were discussed. The conclusion was reached that Gottlieb's intention as to the disposition of his estate should be carried out and Krauth was engaged to draw up an agreement to that effect and to start probate proceedings. Mr. Krauth drew up such a contract, dated July 30, 1945. It was signed by Solomena, as the widow, and Emma Kitzan, as the daughter, as the heirs-at-law. John F. Schneider, the friend and advisor of Solomena, and Christ Kitzan, the husband of Emma, the alleged daughter, were then, on the petition of Solomena and Emma, appointed administrators of the estate. In November of 1945 a disagreement arose between the administrators over Mr. Schneider's bill against the estate. Schneider then consulted attorneys. On Nov. 15, 1945, Solomena had a notice of rescission of the contract of July 30, 1945, served on all the parties. Soon thereafter this action was commenced.

The plaintiff, Solomena, contends that as the widow and sole heir of Gottlieb Zimmerman, she is the owner of all the estate; that the contract made in Mr. Krauth's office was procured by fraud and without any consideration, and consequently is invalid.

The defendants contend that there was no fraud in connection with the execution of the family contract and that it is valid. They claim ownership of Gottlieb's property as therein provided.

Plaintiffs rely on two representations claimed to have been made by Mr. Krauth, the attorney, as fraudulent. The claim, first, that he represented in the conference after the box was opened, that the deeds

and instruments there found were legal and binding, and, second, that he represented that Emma was the daughter of Gottlieb Zimmerman and entitled to inherit one-half of the estate. They claim both these representations were false. They further contend they thought Mr. Krauth was their attorney and that they relied on him and agreed to everything he advised.

The evidence shows that the deeds, bill of sale and escrow letter were prepared on July 20, 1943 by Mr. Krauth for Gottlieb Zimmerman, and on his instructions. Gottlieb had told John F. Schneider about these instruments and some of the family had some knowledge of Gottlieb's intention to divide up his estate. A few days after his death some of the defendants had talks with Mr. Krauth regarding the estate. The meeting followed.

All the parties were German and the conversation was partly in German and partly in English. Mr. Krauth testifies that he read the papers in English and explained them to the parties in German. He says he told them that these deeds and instruments were invalid because they had not been delivered to Mr. Schneider before Gottlieb's death. In that he is corroborated by three witnesses. That is disputed by the plaintiffs although Mr. Schneider at one time in his testimony said he thought they were good but that Krauth did not tell him so. They now claim that Krauth told them the deeds were valid and that partly for this reason Solomena signed the contract. After discussion of the matter, the parties agreed to follow out Gottlieb's intentions and divide the property. They engaged Krauth to draw the agreement and to start the probate proceedings.

At that meeting after the agreement was reached, Mr. Krauth drew up the petition for administration and it was signed by Solomena and Emma. Later Mr. Krauth drew up the contract and took it to Solomena for signature. She would not sign before a conference with Mr. Schneider so they both went to Mr. Schneider's home. There Mr. Krauth says he again read the contract in English and explained it to Solomena in German. After some discussion Mr. Schneider advised Solomena to sign the contract, saying that it was in accordance with the agreement.

It is evident that if Mr. Krauth had told them at the conference that the deeds were valid there would not have been any need of a family agreement. They could have been recorded without any probate proceedings and since they agreed to carry out Gottlieb's wishes that would have been the simplest way to do it. It is admitted, however, that Mr. Krauth told them that in order to carry out Gottlieb's intentions it would be necessary to probate the estate and to make a contract to have distribution made in accordance with his intention as evidenced by the deeds. There would have been no occasion for such advice if the deeds had been valid. Clearly the circumstances support Mr. Krauth's version of what he told the assembled, interested parties on that matter.

The conclusion of the trial judge also supports the veracity of Mr. Krauth. The trial judge hears and sees the witnesses and is in much better position to pass upon the veracity of the witness than we are. When a case triable to the court alone is brought before this court on a trial de novo appreciable weight is given to the findings of the trial court on such matters. Braaten v. Grabinski, 77 N.D. 422, 43 N.W.2d 381; Cretors v. Troyer, 63 N.D. 231, 247 N.W. 558; Ellison v. Ellison, N.D., 54 N.W.2d 656; Braaten v. Brenna, N.D., 63 N.W.2d 302. Prior to the trial of this case a jury and another judge reached the same conclusions regarding Mr. Krauth's veracity.

The only other point of claimed fraud in connection with the execution of the contract is that in the conversation prior to reaching the agreement Mr. Krauth said that Emma Kitzan was the daughter of Gottlieb Zimmerman and as the only child was entitled, according to law, to inherit one-half of his estate. It is claimed that that was a false representation which plaintiffs believe and which helped to induce Solomena to sign the family contract.

It is admitted that Mr. Krauth did so advise the conference. He believed that to be a fact. Emma is so described in the deed and letter of instruction found in the iron box which Mr. Krauth had prepared at Gottlieb's direction two years before, and which Gottlieb signed.

The evidence shows that Emma was not the natural daughter of Gottlieb and his first wife. On the other hand it does show that she was brought to America when she was 12 years old upon an agreement between her mother and Gottlieb and his wife that they would bring her up as their own. That agreement was reached by correspondence and the letters were not available. Gottlieb Heinle, however, testified he read those letters in the old country and that on his arrival here Gottlieb Zimmerman admitted he had his wife write them because he could not write himself. Heinle brought Emma to America and was reimbursed her fare by Gottlieb as was provided in those letters.

After Emma arrived she was treated just like a daughter and conducted herself as a daughter calling Mr. and Mrs. Zimmerman, "papa" and "mamma". There is testimony that in the letter written her mother the Zimmermans wrote that they would "take her for their own child." When he paid her fare on her arrival Gottlieb said: "Emma will be our own child now * * * and shall have everything after I die." Gottlieb on many occasions expressed the intention of making her the heir of all his property making such remarks as "We will take her on as my child and heir." "She will be our child and will inherit all we have when we die." When Emma married, Gottlieb gave her 40 acres of land and 7 or 8 cows, apparently as a dowry. His conclusions on Emma's standing in the family are perhaps best indicated when he had her described as his daughter in the deed by which he intended to leave her part of his property.

The actions of Gottlieb in having her brought to the United States, in bringing her up, giving her property at the time of her marriage and saying that she was his heir, all support such an agreement. Gottlieb may not have known how to make a statutory adoption. He may have thought that his actions amounted to an adoption in accordance with his agreement.

Thus, while there is no evidence of a statutory adoption there is some evidence indicating that there was an informal contract to adopt her. Such a contract may be established in a court of equity if there is sufficient evidence. Muhlhauser v. Becker, 74 N.D. 103, 20 N.W.2d 353.

It is true that the evidence of the terms of the agreement is not very clear or definite but that cannot be expected in the case of correspondence between people of different countries some 40 years ago. The evidence is sufficient, however, to show why Gottlieb had her described as his daughter in the letter of instructions and the deed accompanying that letter and justifies Mr. Krauth in making that representation to the plaintiffs.

There is evidence also that the plaintiffs were not misled by this representation. Mr. Schneider testifies that he knew Emma was not a daughter. Solomena testified that she knew Gottlieb had no children. The evidence further shows that all the parties knew the informal relationship of daughter and parents which had existed and they knew Gottlieb's intention to make her his heir.

In this case, however, it is not necessary for us to decide whether there was an executed agreement to adopt. Emma participated in the family conference and made no claim there that she was the daughter. She waived all claim to inherit as a daughter when she joined in the family contract to carry out Gottlieb's attempted division of his property. The evidence does show, however, that the representation that she was Gottlieb's daughter was made in good faith and had some grounds to substantiate it. A trial in court would have been necessary to decide the matter.

There is no indication of fraud in the actions of Mr. Krauth. He told the interested parties at the conference of the invalidity of the deeds. He told them in good

faith what Emma would inherit as a daughter. He told them how Gottlieb's intentions could be carried out. All the parties were interested in these matters and were entitled to know them before they could reach a decision. It was Mr. Krauth's duty as a lawyer to inform them thereof. There is no evidence that he attempted in any way to influence their decision.

■ The representations made under such circumstances do not amount to fraud. " 'Fraud cannot exist, as a matter of fact, where the intent to deceive does not exist, for it is emphatically the action of the mind, which gives it existence.' " State ex rel. Jensen v. Wells, 66 S.D. 236, 281 N.W. 99, 103; Tilghman v. West, 43 N.C. 183.

■■ Actual fraud cannot be presumed but must be affirmatively proved by the one who relies on it. As in other civil actions the burden of proving affirmative defense is on the party alleging such defense. 37 C.J.S., Fraud, § 94, p. 393; Steinbach v. Bauclair, 38 N.D. 223, 164 N.W. 672.

■ Family settlements of estate matters when free from fraud are favored by the courts.

"Courts will enforce family settlement agreements of estates when free from fraud and creditors are not involved regardless of whether the settlement follows the law of descent and distribution." Muhlhauser v. Becker, 76 N.D. 402, 417, 37 N.W.2d 352, 362. See also Aberle v. Merkel, 70 N.D. 89, 291 N.W. 913; 26 C.J.S., Descent and Distribution, § 73, p. 1108.

"The compromise and settlement among heirs, distributees, devisees, and legatees of an intestate's estate, where free from fraud, are favored and enforced by the law." 16 Am.Jur., Descent and Distribution, § 145, p. 925.

In Re Vasgaard's Estate, 62 S.D. 421, 253 N.W. 453, 456, it is said:

"With scarcely a dissenting voice save in the state of Wisconsin * * * it is held that family agreements relative to the distribution of property of a decedent among the persons thereto entitled are not contrary to public policy and if fairly made are binding and enforceable according to their terms; and indeed it is frequently said that the law looks with particular favor upon such family compromises. To that view this court is already committed and has refused to recede therefrom. See Ewing v. Waddington, 1933 [62 S.D. 166], 252 N.W. 28, and cases there cited."

Judge Miller in his memorandum decision says: "Plaintiff was not misled or influenced by fraud, nor did she act under any mistake of fact or law or undue influence." We agree.

■ Plaintiffs allege that there was no consideration for this family agreement and that, therefore, it is void. It is clear, however, that there was a desire on the part of all the interested parties to carry out the evident intent of the decedent, Gottlieb Zimmerman. There is testimony that Solomena said: "This should go like father wants to have it go." Emma gave up her claim as a daughter. Undoubtedly there would have been a contest over Solomena's right to at least half the estate claimed by Emma as a daughter and a long standing controversy over that might have ensued. The carrying out of the decedent's known intent with regard to the distribution of this estate and termination of all controversies regarding said estate is a sufficient consideration. 16 Am.Jur., Descent and Distribution, Consideration, § 147, p. 928.

The fairness of the family agreement may also be considered. Emma had for at least eight years helped the Zimmermans as a daughter in the carrying on of the household and farming activities and had assisted them in their active life of accumulating property. On the other hand Solomena and Gottlieb had married in their old age. They had been married for only about four years. Solomena could not have aided Gottlieb in accumulating this property. Gottlieb provided her the homestead for life and more than enough money to cover the widow's exemptions.

Plaintiffs' final claim is that this family contract is conditional on the county court's approval. The contract must be read as a whole. When this is done it is clear that the intent of the parties was to substitute the family contract for the law of succession. The county court is bound by that contract. Any wording requesting the county court to approve the contract is mere surplusage. The final clause of that paragraph asks "that the court issue its final decree of distribution by distributing the whole estate of said deceased in accordance with the terms and conditions of this contract." The court is asked to consider this contract as an assignment of the legal interests of the parties and to make distribution accordingly. The contract being valid it is the duty of the county court to give it effect.

The judgment of the district court is affirmed.

MORRIS, C. J., and SATHRE and BURKE, JJ., concur.

JOHNSON, J., did not participate.